Johnnie Ray LEE, Plaintiff-Appellant,

v.

SOUTHERN HOME SITES CORPORA-
TION, Defendant-Appellee.

No. 28167.

United States Court of Appeals,
Fifth Circuit.

July 13, 1970.

Fred L. Banks, Jr., Reuben V. Anderson, Jackson, Miss., Jack Greenberg, Michael Davidson, William Bennett Turner, Norman C. Amaker, New York City, for plaintiff-appellant.

George E. Morse, White & Morse, Eldon Bolton, Jr., Gulfport, Miss., for defendant-appellee.

Before COLEMAN, GOLDBERG, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge.

A Negro citizen, Johnnie Ray Lee, sued for and obtained injunctive enforcement of his right to buy a certain residential lot which theretofore had been denied him solely because of his race. Contending, however, that the remedies prescribed by the Court below were not sufficiently extensive he has appealed. We affirm and remand.

The action was brought pursuant to the Thirteenth Amendment and 42 U.S. C.A. §§ 1981, 1982 [1] and was expressly denominated a class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole", 28 U.S.C.A. rule 23(b) (2).

On or about July 30, 1968, Southern Home Sites, Incorporated, mailed out to named addressees about a thousand cir-

---

[1]. 42 U.S.C.A. § 1982
"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, pur- chase, lease, sell, hold, and convey real and personal property".
See Jones v. Alfred H. Mayer Company, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

cular letters, offering, for $49.50, to sell each of them a lot in Ocean Beach Estates, Jackson County, Mississippi. The letters specifically required that "You must be a member of the white race". Those desiring to acquire such a lot had to present themselves and the offering letter at the Ocean Springs Office not later than August 15, 1968.

The addressee list was compiled by having individuals "register" at a booth maintained at the State Fair in Jackson, and at other places. Southern Home Sites Corporation did not keep a list of those to whom the letters were sent and this fact was indicated in answers filed March 11, 1969, [Record, 31] in response to interrogatories propounded by the plaintiffs. It was obviously unnecessary that such a list be kept because the addressee could activate the offer only by appearing in person, with letter in hand.

Lee lived about one hundred miles from Ocean Springs. Upon receiving one of the letters he consulted counsel and went to the Southern Office, taking with him his letter and $50 in cash. Because he was a Negro his tender of the money was refused. Suit was filed October 15, 1968. The case was tried to the District Judge on March 18, 1969.

On April 7, 1969, the Court, in a written opinion, held that Lee was entitled to an injunction prohibiting future discrimination against Negroes in the sale of lots in Ocean Beach Estates, and further commanding that Lee be given the opportunity to purchase a lot in conformity with the terms expressed in the letter. The Court further found that upon being given the opportunity to purchase a lot for $49.50 Lee

> "will have suffered no monetary damage. Likewise, the Court finds that punitive damages are unwarranted on the facts presented here. See the similar disposition of this point in *Jones*, 20 L.Ed.2d at 1193, N. 14."

For reasons not apparent of record the judgment implementing this opinion was not entered until May 14, 1969.

In the meantime, on April 17, 1969, the plaintiff moved the Court for an order describing the class represented by him as being all Negro recipients of letters from the defendant, substantially similar to the letter received by Lee, and requiring Southern Home Sites, at its expense, to notify all members of the class of their right to purchase a lot on the same terms as Lee, and (2) awarding reasonable attorneys' fees.

The defendant then filed a second affidavit that it did not retain a list of those receiving the letters and had no knowledge of the names of those to whom the letters had been mailed.

On June 5, after the entry of judgment on May 14, plaintiff filed a motion, under the retained jurisdiction, that Southern Home Sites be required to place advertisements in newspapers in Mississippi, Alabama, and Louisiana, to run [daily] for at least a week, stating, *inter alia*, "any Negro citizen who had received such a letter now has the right to claim a lot for $49.50 with no other condition". It was further proposed that if an individual no longer had the letter he could meet the requirements by simply filing an affidavit that he had received such a letter.

The Court responded to this request by saying only that the judgment of May 14 had completely disposed of the matter.

That judgment of May 14, 1969, reads as follows:

"ORDERED, ADJUDGED and DECREED as follows:

"1. Defendant Southern Home Sites Corp., its agents, employees and those acting in concert with it, are enjoined from maintaining a policy or practice of discrimination against Negroes seeking to purchase or acquire lots in Ocean Beach Estates.

"2. The acts, policies and practices of defendant as found by this Court in its decision of April 7, 1969, violate the rights of plaintiff and the class he

represents under the provisions of 42 U.S.C. Sections 1981 and 1982.

"3. Defendant, its agents, employees and those acting in concert with it, are enjoined from showing, selling, encumbering, renting or otherwise disposing of any lot in Ocean Beach Estates until defendant has first offered a lot to plaintiff on the terms set forth in defendant's letter to plaintiff dated July 30, 1968. To implement this portion of this judgment, defendant is ordered to offer plaintiff a choice of two lots in Ocean Beach Estates within five days after receiving notice of the entry of this judgment; plaintiff shall have five days after receiving such offer from defendant to select the lot of his choice. Upon such selection and the tender by plaintiff of $49.50, defendant shall convey to plaintiff the lot of his choice.

"4. Pursuant to Rule 23(c) (2) [The Rule correctly applicable was 23(c) (3), not (c) (2)] of the Federal Rules of Civil Procedure, the class on whose behalf plaintiff has maintained this action is described as follows:

all Negro citizens who received letters from defendant substantially similar to the letter from defendant to plaintiff dated July 30, 1968.

"5. Defendant shall, within ten days after entry of this judgment furnish to attorneys for the plaintiff a copy of its mailing list, if any, for letters dated July 30, 1968, identical to the letter received by the plaintiff herein; or if such list is unavailable shall inform the plaintiff and the Court of the reason for such unavailability and shall, in such event, furnish the plaintiff instead, information as to the sources utilized in the compilation of said list. [The answers filed on March 11, 1968, in response to the interrogatories had specified that there was no such list in existence].

"6. Plaintiff's prayer for compensatory damages and attorneys' fees is denied.

"7. Plaintiff's prayer for punitive or exemplary damages is denied.

"8. The costs of this action shall be borne by defendant.

"9. Jurisdiction of this cause is retained until such time as this judgment has been fully complied with."

On appeal, Lee says that the Court below erred in its failure to award reasonable attorneys' fees, in failing to award damages, and in "denying all meaningful relief to the class".

The complaint prayed for $100 compensatory damages and $3,000 "punitive or exemplary" damages. As noted above, the Court, relying on language appearing in Jones v. Mayer, *supra*, denied all damages.

 There was no evidence offered as to the quantum of compensatory damages. The record reveals that the lots were worth $600 when the offer was made and $1,000 when the case was tried. Thus, upon receipt of his deed the plaintiff would have immediately realized a gain of $400, or eight times his original investment. Obviously, the District Court was of the opinion that this $400 gain had swallowed the $100 alleged as compensatory damages. The purpose of damages is to put the plaintiff in the same position, so far as money can do it, as he would have been had there been no injury or breach of duty, that is, to compensate him for the injury actually sustained, Bussy v. Donaldson, 4 U.S. 206, 4 Dall. 206, 1 L.Ed. 802 (1800); Milwaukee & St. P. R. Co. v. Arms, 91 U.S. 489, 23 L.Ed. 374 (1875). We hold, therefore, that the District Court did not err in the denial of compensatory damages.

This brings us to the issue of whether the District Judge was in error when he found [Page 292, ante] "that punitive damages are unwarranted on the facts presented here". The judgment now under review, as already indicated, was dated May 15, 1969. On December 15, 1969, the Supreme Court decided Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386. It

was there held that under the Act of 1866, 42 U.S.C.A. § 1982, compensatory damages, although not specifically mentioned in the statute, may be imposed for the deprivation of a federal right if it results from a "disregard of the command of the statute" and if it results in damage to one of the class for whose especial benefit the statute was enacted. It was further held that such damages are governed by federal standards and that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes, 42 U.S.C.A. § 1988.

It had previously been held in another court that such a deprivation could justify punitive damages if it resulted from unreasonable and unjust discrimination, Wills v. Trans World Airlines, Inc., S.D. Calif., 1961, 200 F.Supp. 360. In that case, the Court significantly added the following language:

> "Accordingly, exemplary damages may be awarded to plaintiff 'if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations (citing cases)' " 200 F.Supp., 367.

■ The general rule as to punitive damages, repeatedly found in the reported cases, is that they may be imposed if a defendant has acted wilfully and in gross disregard for the rights of the complaining party. Roberts v. Pierce, 5 Cir.1968, 398 F.2d 954. Since such damages are punitory and are assessed as an example and warning to others, Northwestern National Casualty Company v. McNulty, 5 Cir.1962, 307 F. 2d 432, they are not a favorite in law and are to be allowed only with caution and within narrow limits, Aladdin Manufacturing Company v. Mantle Lamp Company of America, 7 Cir.1941, 116 F. 2d 708.

■ The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact. See Crowell-Collier Publishing Company v. Caldwell, 5 Cir.1948, 170 F.2d 941. It was there held that the jury should have been instructed "that they may, not that they must, award them [punitive damages]", 170 F.2d at 945.

There is no doubt that Southern Home Sites, Inc. deliberately refused to sell Johnnie Ray Lee a lot and it did so for racial reasons. Did this deprive the trier of the fact of the customary duty to weigh the totality of the circumstances and exercise a sound discretion as to the results which should follow?

■ On June 17, 1968, Jones v. Mayer, *supra*, was decided. For the first time, it was learned that the Act of 1866 prohibited the refusal here in question. Obviously, Southern Home Sites, Inc. could not have been found punitively guilty of prohibited conduct prior to that date. Six weeks later, July 30, 1968, it mailed out the letters. On August 13, Lee attempted to buy the lot and was refused.

The plaintiff propounded interrogatories on February 17, 1969. The answers were filed March 11, 1969. No question was asked as to any knowledge or notice which Southern Home Sites, through its officers and employees, had or did not have, from any source, of the Supreme Court decision of June 17. Lack of knowledge or notice would constitute no defense to the enforcement of the statute. In the brief lapse of time here involved, however, it is relevant to the wilfulness or wantonness with which Southern Home Sites acted. For obvious reasons, the Supreme Court denied punitive damages in *Jones*. Counsel for Lee say that the decision received widespread notice in the newspapers and that the defendants must have read about it. In the absence of other proof, this is hardly an adequate foundation for wilfulness. Since the plaintiffs were seeking punishment, the trial judge did not abuse his discretion in giving the defendant the

benefit of any reasonable doubt, consistent with a preponderance of the evidence, on the issue of wilfulness. It is significant that plaintiffs offered no proof on that subject other than the evidence of the refusal.

■ The District Court found that the facts did not warrant the infliction of punitive damages. We are unable to say that this was an error of law or a clear error of fact.

The point was not raised or preserved below as to whether a United States District Court, sitting in equity, may award punitive damages in the absence of a jury trial if one is demanded. See Dairy Queen, Inc. v. Wood, 1962, 369 U. S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44; Turner v. Fouche [3 Judge District Court] S.D., Ga., 1968, 290 F.Supp. 648, 652.

It is next asserted that it was error to deny plaintiffs the recovery of reasonable attorney's fees.

Section 1982 of Title 42, U.S.C.A., does not, by its terms, provide its own method of enforcement, nor does it expressly authorize the allowance of attorneys' fees, as do some of the more recent civil rights statutes. E.g., Civil Rights Act of 1964, Title II, 42 U.S.C.A. § 2000a–3(b). However, the Supreme Court, while upholding Section 1982 as a valid exercise of congressional power under the Thirteenth Amendment in Jones v. Alfred H. Mayer Company, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, stated in a footnote that:

"* * * The fact that 42 U.S.C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not, of course, prevent a federal court from *fashioning an effective equitable remedy* * * *" 392 U.S. at 414, n.13, 88 S.Ct. at 2190 n.13, 20 L.Ed.2d at 1192, n.13. (Emphasis added)

■ There is ample authority, outside the civil rights area, to support the proposition that the allowance of attorneys' fees and expenses of preparation for trial is in the discretion of the district court *sitting in equity* where exceptional circumstances call for their allowance in order to do justice between the parties, Smoot v. Fox, 6 Cir.1965, 353 F.2d 830, 832; Rolax v. Atlantic Coast Line R. Co., 4 Cir., 1951, 186 F.2d 473, 481, as well as in the more traditional situations where the allowance of attorneys' fees is provided for by statute or contract. See e.g. Maier Brewing Company v. Fleischmann Distilling Corp., 9 Cir.1966, 359 F.2d 156, 158; Local Union 984, International Brotherhood of Teamsters, etc. v. Humko Company, 6 Cir.1961, 287 F.2d 231, 243, cert. denied 366 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254. In the area of civil rights, many cases have either allowed or implicitly recognized the discretionary power of a district judge to award attorneys' fees in a proper case in the absence of express statutory provision (E.g. Williams v. Kimbrough, 5 Cir.1969, 415 F.2d 874, cert. denied 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 [February 2, 1970]; Cato v. Parham, 8 Cir., 1968, 403 F.2d 12, 16; Hill v. Franklin County Board of Education, 6 Cir., 1968, 390 F.2d 583; Kemp v. Beasley, 8 Cir., 1965, 352 F.2d 14; Bradley v. The School Board of City of Richmond, Virginia, 4 Cir., 1965, 345 F.2d 310; Rogers v. Paul, 8 Cir.1965, 345 F.2d 117; Bell v. School Board of Powhatan County, Virginia, 4 Cir.1963, 321 F.2d 494) and especially so when one considers that much of the elimination of unlawful racial discrimination necessarily devolves upon private litigants and their attorneys, cf. Newman v. Piggie Park Enterprises, Inc., 390 U. S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and the general problems of representation in civil rights cases. See Sanders v. Russell, 5 Cir.1968, 401 F.2d 241.

In Williams v. Kimbrough, *supra*, this court recognized the equitable discretion of the trial court to award attorney's fees in a civil rights case but found "no compelling circumstances to justify overturning the trial court's discretion in refusing to award attorneys' fees" where the trial court's action was based

on a finding that the defendant's actions were not "unreasonable and obdurately obstinate". At 875.

■ Clearly, for this court to overturn a denial of attorneys' fees, it must appear that the trial court abused its discretion, but it is impossible to review the soundness of such an exercise of discretion unless the trial court indicates in its findings of fact the grounds upon which it exercised its discretion, as the trial court did in Williams v. Kimbrough, supra. Here no findings of fact accompany the trial court's refusal to allow attorneys' fees, and, consequently, the case must be remanded for further findings sufficient to enable this court to review the denial of attorneys' fees.

We now arrive at the issue concerning notice, not raised by the plaintiffs until after judgment was entered. The Court, however, had retained jurisdiction for the effectuation of its decree.

In his brief, plaintiff says:

"We do not contend that notice is required in every Rule 23 class action. We contend simply that it is required in this case as a matter of complete equitable relief."

We decide the issue from that approach.

In the interest of total accuracy, we quote the following from the plaintiff's motion:

"* * * Plaintiff asks that the Court direct defendant forthwith to place an advertisement at least three columns wide in the Jackson Clarion Ledger, the Mobile Press Register, the Gulfport Daily Herald, the Mobile Press and the New Orleans Times-Picayune, to run for at least one week, stating, in substance, that (a) defendant had sent letters to persons throughout the area offering lots worth $600 in Ocean Beach Estates for $49.50, (b) defendant had limited the offer to members of the white race, (c) such racial limitation has been declared illegal by a federal court, (d) any Negro citizen who had received such a letter now has the right to claim a lot for $49.50, with no other condition, (e) any Negro citizen can claim a lot by bringing his letter, or an affidavit swearing that he had received such a letter from defendant, to the office of defendant and tendering $49.50, and (f) information concerning the rights of Negro citizens to purchase lots in Ocean Beach Estates may be obtained from Fred L. Banks, Jr., 538½ North Farish Street, Jackson, Mississippi 39202 telephone (601) 948-7301. Members of the class should be permitted to tender an affidavit in lieu of defendant's letter, because many of the members of the class will no doubt have discarded the letter, just as defendant has discarded or cannot locate any mailing list of persons to whom letters were sent.

"Defendant must also be ordered to offer to each member of the class a lot in Ocean Beach Estates on the terms offered to plaintiff, and to convey a lot in Ocean Beach Estates to each member of the class who tenders $49.-50 and who presents defendant either with the letter received by such member of the class or with an affidavit stating that such member of the class has received such a letter from defendant."

The requested notice called for too much.

Plaintiff proposed that notice be given in numerous daily papers that *any member* of the Negro race who claimed to have received the letter could come forward and, by filing an ex parte affidavit, obtain a lot, regardless of whether upon receipt of the letter he either desired or tried to take advantage of the offer.

It is now well known, as a result of the trial, that Southern Home Sites has no list of those to whom it sent letters. It has no means by which to contradict an ex parte affidavit. Consequently, if the District Court had ordered the notice proposed by the plaintiff any individual

who read any of the suggested daily papers and who proposed to make an affidavit that he got such a letter could, for $49.50, without further process acquire a lot now valued at $1,000. To deprive owners of their property by ex parte affidavits would, of course, offend due process.

The Court reserved jurisdiction of the case for the enforcement of its decree. Obviously, any person who can present a letter received by him and who can show by competent evidence that, in good faith, he was either deterred or prevented from acquiring a lot by reason of the racial restriction is entitled to the same relief as Lee.

In the best interest of the parties, we direct that upon remand notice shall be given. It should be in a format to be approved by the Court, published thrice in two daily papers in Mississippi, to be selected by the Court. The language of the notice will be approved by the Court, to the effect that those of the class who received a letter dated July 30, 1968, who file it in Court within thirty days of publication, and who can show by competent evidence that they, in good faith, failed to accept the offer because of the racial restrictions, will receive the same relief Lee received. By that method both the plaintiffs and the defendant will know how and when the rights of the plaintiffs are to be vindicated and when they shall have expired.

On the merits, as to damages compensatory and punitive and as to the notice requested, the judgment of the District Court is affirmed.

Since the District Court retained jurisdiction for the enforcement of its decree, the case will be remanded, particularly to permit the notice herein directed and for additional findings regarding attorneys' fees.

The parties shall each bear his [its] costs on appeal.

Affirmed and remanded.