Irving STOLBERG, Plaintiff-Appellant,

v.

MEMBERS OF the BOARD OF TRUS-
TEES FOR the STATE COLLEGES OF
the STATE OF CONNECTICUT et al.,
Defendants-Appellees.

No. 217, Docket 72–1726.

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1972.

Decided Jan. 29, 1973.

Louis M. Winer, New Haven, Conn. (Tyler, Cooper, Grant, Bowerman & Keefe, Irving S. Schloss, New Haven, Conn., of counsel), for plaintiff-appellant.

Sidney D. Giber, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., F. Michael Ahern, Asst. Atty. Gen., Hartford, Conn., of counsel), for defendants-appellees.

Before LUMBARD, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Irving Stolberg, formerly an Assistant Professor of Geography at Southern Connecticut State College ("SCSC"), appeals from a judgment in his favor in his action under the Civil Rights Act, 42 U.S.C. § 1983, against the former President of SCSC and members of the Board of Trustees for the State Colleges of Connecticut based on their nonrenewal of his teaching contract and consequent denial of tenure, allegedly in violation of his First Amendment and Due Process rights. The district court, M. Joseph Blumenfeld, Chief Judge, sitting without a jury, found defendants' action to have been in retaliation for Stolberg's exercise of his First Amendment rights and awarded him reinstatement with tenure and no loss of seniority and $9,000 to cover his salary loss. However, he denied additional compensatory damages, punitive damages or attorneys' fees. The court found it unnecessary, in view of its disposition of the First Amendment claims, to decide whether Stolberg had also been denied procedural due process.

Stolberg here contends that the district court should have decided his due process claims and should have awarded him additional compensatory damages for humiliation, emotional distress and injury to his reputation, plus punitive

damages and attorneys' fees.[1] We affirm except as to the denial of attorneys' fees, which we reverse, and we remand for determination and award of reasonable attorneys' fees.

The findings of the district court, made in an unreported decision,[2] are not disputed. They reveal an unpleasant picture, characterized by reactionary and rather high-handed conduct on the part of a college president toward a faculty member, approved by some trustees and tolerated by others. Beginning with the 1966–1967 school year Stolberg, a graduate of the University of California at Los Angeles, with a distinguished academic record, was employed by SCSC as an Assistant Professor. Under existing regulations and practice at SCSC, teachers who satisfactorily completed three years in probationary status were entitled to tenure.

In February, 1968, as part of his active participation in discussions regarding international political affairs, particularly our country's involvement in the war in Vietnam, Stolberg sent to his fellow faculty members at SCSC an invitation to support a Peace Program and Memorial Service to be held in New Haven relating to that war. Two months earlier Stolberg had sent a letter to the President of Albertus Magnus College in New Haven suggesting that she had arbitrarily suspended a number of students and offering the mediation services of The American Association of University Professors, a local chapter of which Stolberg was then President.

Dr. Hilton C. Buley, President of SCSC, whose views apparently differed sharply from those of Stolberg, whom he seems to have regarded as subversive, did not take kindly to Stolberg's communications. Buley promptly notified Stolberg that his contract would not be renewed for the coming year, 1968–1969, which would have been his third year on the faculty.

Stolberg unsuccessfully appealed President Buley's decision to the personnel committee of the Board of Trustees for the State College and subsequently requested the Board to reconsider his case, claiming that the committee's procedures did not comport with the requirements of due process. The Board then sought advice from the State Attorney General, who expressed the opinion that the Board proceedings upholding Buley's decision were not legally sound in view of the appeal clause in the Board's Personnel Policies. President Buley thereupon volunteered to rescind Stolberg's termination, and Stolberg continued on the faculty during the 1968–69 term. Buley, however, sought to have the clause repealed with the intention of dismissing Stolberg thereafter.

The Board, fearing discontent among the faculty, decided against repeal of the appeal procedure in December, 1968. Nonetheless, on February 27, 1969, Buley again notified Stolberg, without reasons, that his contract would be terminated at the end of the term and tenure thereby denied, despite recommendations from the chairman and members of the geography department that he be given tenure. Stolberg again appealed to the Board's Personnel Committee and was allowed to appear personally before them, although he received no notice of any charges against him. Dr. Buley appeared *ex parte* before the Board two weeks later, without notice to Stolberg, and listed several "incidents" as the basis for the latter's dismissal.

The Board subsequently affirmed Buley's decision on June 13, 1969. This action was filed by Stolberg on December 15, 1969. At no time during the course of administrative or judicial proceedings regarding Stolberg's termination was

1. After such additional sums had been denied at trial, appellant moved under Rules 52 and 59, F.R.Civ.P., for amendment of Chief Judge Blumenfeld's findings and judgment to include these items of relief. The motion was denied.

2. Stolberg v. Members of the Board of Trustees, Civil No. 13,591 (D.Conn. Feb. 29, 1972).

his competence as an instructor questioned.

■ At the conclusion of the trial, at which no defense was presented, Chief Judge Blumenfeld held that the "incidents" listed by Buley had been make-weights and that the real reason for not renewing Stolberg's teaching contract was his previous exercise of his First Amendment rights, a constitutionally impermissible basis for dismissal, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Judge Blumenfeld directed the Board of Trustees to reinstate Stolberg as a faculty member at SCSC with tenure and without loss of seniority, and awarded judgment in the sum of $9,000 against Dr. Buley and certain of the individual members of the Board to compensate Stolberg for his intervening salary loss. Neither the relief granted nor the basis on which it was predicated are challenged on appeal by the defendants. Stolberg, however, challenges the sufficiency of the relief granted in his favor, for the above stated reasons.

■ We conclude that it was entirely proper for Chief Judge Blumenfeld not to adjudicate appellant's additional claim that he was deprived of his livelihood through procedures lacking in due process. Though Stolberg claims he suffered additional harm, based on a due process denial, through loss of an earlier opportunity to clear himself before the Board of Trustees of unsupported charges against him, made *ex parte* to the Board by Dr. Buley, any resulting injury to reputation would have been compensable, if proved, and fully remediable as a consequence of the non-renewal of his teaching contract in retaliation for his lawful exercise of his First Amendment rights. See Donovan v. Reinbold, 433 F.2d 738, 743 (9th Cir. 1970); Lee v. Southern Home Sites Corp., 429 F.2d 290, 293 (5th Cir. 1970); cf. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 238–240, 90 S. Ct. 400, 24 L.Ed.2d 386 (1969).

Thus a decision of the due process claim was not necessary to accord Stolberg whatever relief he was entitled to on that claim. The most he lost by reason of the court's failure to decide it was the inability to achieve the personal satisfaction of obtaining a finding that his Due Process as well as his First Amendment rights had been violated. This would not mandate a decision. Furthermore, the subsequent decisions of the Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the pendency of which was noted by Judge Blumenfeld, and in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), confirmed the district court's observation that the serious question of what procedural process is due before administrators of public educational institutions may decline to renew contracts of tenured and nontenured teachers, involves complicated sub-issues that are not easily answered. Under these circumstances, it was entirely proper for Judge Blumenfeld not to "anticipate a question of constitutional law in advance of the necessity of deciding it," Ashwander v. TVA, 297 U.S. 288, 346–347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandies, J., concurring).

■ We turn then to the question of the sufficiency of the relief granted Stolberg. The district court found that following his dismissal from SCSC he was almost immediately able to secure another position at a lower salary as an instructor of geography at another college and was elected to the Connecticut House of Representatives from the district encompassing SCSC. The award to him of $9,000 in compensatory damages represented the difference in earnings between the salaries he would have earned at the two colleges. Additional compensatory damages for humiliation, distress, and injury to reputation were denied for failure of proof and because any such damage would be "wholly speculative." We agree.

■ We do not find Judge Blumenfeld's findings to be clearly erroneous, Rule 52, F.R.Civ.P. Neither medical evidence of pain and suffering nor evi-

dence of damage to Stolberg's reputation in his community was introduced, save Stolberg's own testimony of being upset over the whole course of events. Although he testified that he had encountered public damage to his reputation, had been hindered in his election campaign efforts and in his effectiveness later as a State legislator, and had experienced disruption of personally valuable relationships with his former students, other factors, including the relative ease with which he obtained a new position elsewhere and his successful election to the State legislature, tended to negate or minimize any such harm.

The credibility to be accorded the evidence was for Judge Blumenfeld, and it is obvious that some of the alleged injury was too speculative to be compensable in any event. Donovan v. Reinbold, *supra*, 433 F.2d at 743, relied on by appellant, merely indicates that a district court may award damages for emotional or mental distress found to have resulted from loss of a public job to which the holder had an unusual dedication and from which he has been unconstitutionally dismissed, and not that such a finding is to be presumed or found solely on the basis of the plaintiff's testimony.

■■ Similarly we affirm the denial of punitive damages. At the end of the trial in December, 1971, counsel for the trustees stated in open court that the trustees were at that point willing to offer appellant tenure. Largely from this statement, Judge Blumenfeld concluded that an award of exemplary damages against these State officials was unnecessary to secure "full compliance with constitutional requirements" and might, to the public's detriment, unnecessarily deter responsible citizens from agreeing to serve in the voluntary capacity of members of the Board. While punitive damages may, in an appropriate case, be awarded for violation of 42 U.S.C. § 1983, even in the absence of actual damages, see Basista v. Weir, 340 F.2d 74, 86–88 (3d Cir. 1965); Mansell v. Saunders, 372 F.2d 573, 576 (5th Cir. 1967);

Caperci v. Huntoon, 397 F.2d 799 (1st Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968), failure to award such relief will not be lightly overturned. Whether the standard to be applied in the first instance for determination of whether punitive damages should be allowed is restricted to instances where "willful or malicious violations of Constitutional rights" are proved, Sexton v. Gibbs, 327 F.Supp. 134, 142–143 (N.D.Tex.), affd., 446 F.2d 904 (5th Cir. 1971), or where "a defendant has acted wilfully and in gross disregard for the rights of the complaining party," Lee v. Southern Home Sites Corp., *supra*, 429 F.2d at 294 (action under 42 U.S.C. §§ 1981, 1982), or should be extended to instances where the defendant acted with knowledge that he was violating the plaintiff's rights or with reckless disregard of whether he was violating such rights, see Adickes v. S. H. Kress & Co., 398 U.S. 144, 233–234, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (opinion of Brennan, J.), appellate review of the district court's determination should necessarily be circumscribed.

> "The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact." Lee v. Southern Home Sites Corp., *supra*, 429 F.2d at 294.

Here Judge Blumenfeld concluded that the award of punitive damages would be unwarranted, unwise and unnecessary. There was ample support for his exercise of discretion.

■ The failure to award reasonable attorneys' fees rests on a somewhat different footing, and we believe that such relief should have been granted. With respect to the issue of whether to award attorneys' fees, the emphasis is not placed solely on whether the defendants should suffer pecuniary punishment or

be additionally deterred. Rather the objective is to assure that the plaintiff, and others who might similarly be forced to great expense to vindicate clear constitutional claims, are not deterred from securing such vindication by the prospect of costly, protracted proceedings which have become necessary only because of the obdurate conduct of the defendants. It is especially important to assure that a healthy climate of free expression is not inhibited "in the community of American schools," Shelton v. Tucker, 364 U.S. 479, 487, 81 S. Ct. 247, 251, 5 L.Ed.2d 231 (1960).

■■ The circumstances of this case persuade us that an award of counsel fees is necessary to protect against the possibility that other faculty members might be reluctant to engage in activities protected by the First Amendment or might forgo the vindication of their rights to do so in a court of law. Such a result would be destructive of the educational process in a free society. When, as here, the constitutional right is one of great importance and proof of an intentional and serious violation is clear and definite, enforcement should not be inhibited by reason of litigation costs.

The district judge denied attorneys' fees primarily on the ground that the only purpose to be served in awarding damages was individual redress, see Arroyo v. Walsh, 317 F.Supp. 869, 873 (D. Conn.1970). He concluded that such an award was rendered unnecessary because the trustees were willing to offer Stolberg tenure at the end of the trial and because the court had now issued a ruling for the future guidance of the defendants.[3] However, application of established principles to the district court's own findings shows that the

standard for awarding attorneys' fees was fully met.

■ Although the award of attorneys' fees is restricted to the exceptional case, see, e. g., Bell v. School Board, 321 F.2d 494, 500 (4th Cir. 1963), the standard is whether "bringing of the action should have been unnecessary and was compelled by the school board's unreasonable, obdurate obstinacy," Bradley v. School Board, 345 F.2d 310, 321 (4th Cir.), vacated on other grounds, 382 U. S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965); Monroe v. Board of Commissioners, 453 F.2d 259, 263 (6th Cir.), cert. denied, 406 U.S. 945, 92 S.Ct. 2045, 32 L.Ed.2d 333 (1972). The Supreme Court has furthermore recognized that "a federal court may award counsel fees to a successful plaintiff where a defense has been maintained 'in bad faith, vexatiously, wantonly, or for oppressive reasons,' 6 Moore's Federal Practice 1352 (1966 ed.)." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam). Because suit clearly should have been unnecessary in this case and was compelled by defendants' conduct, counsel fees should have been awarded.

Stolberg was originally notified by Dr. Buley in February, 1968, that his contract would not be renewed, for reasons that were found to be constitutionally improper and which have never been seriously contested by defendants. Judge Blumenfeld found that at the hearing on Stolberg's first appeal to the Board of Trustees he was "questioned solely about his political and moral convictions. There was no discussion of his competency as a teacher." Despite the subsequent advice of the Attorney General that the appeal proceedings were

---

3. The district judge was also concerned that since the members of the Board of Trustees serve voluntarily the award of attorneys' fees and punitive damages would, if granted, inhibit responsible citizens from performing valuable services for public institutions. The Assistant State Attorney General represented at the oral argument of this appeal that if attorneys' fees were assessed against the defendants he would seek to have them reimbursed by the State. See Conn.Gen. Stats. § 10–235 (1972 Supp.). In any event, we do not believe that this factor should prevent the necessary protection of the clear First Amendment freedoms of faculty members at the State colleges.

not legally sound, and the observation of the Board's Personnel Committee in December, 1968, that "in the absence of evidence more convincing than that presented last year, the Committee concluded that it could not support the President (Buley) in dismissing Irving Stolberg," the committee in June, 1969, did affirm the second dismissal of Stolberg. Furthermore, the dismissal followed an *ex parte* appearance of Dr. Buley, at which he listed several "incidents" as the basis for dismissal, all later found by Judge Blumenfeld to be a mere facade.

When Stolberg was ultimately forced to sue for reinstatement in December, 1969, his suit was vigorously opposed through extensive discovery proceedings and until the end of the trial two years later, in December, 1971. It was not until that point, some $3\frac{1}{2}$ years after the first improper failure to renew Stolberg's contract, that the defendants, after failing to present any defense to appellant's case, finally offered to reinstate him with tenure.

Nor was the belated offer of reinstatement delayed because of any doubt about the legal rights of appellant at the time of the Board's initial decision to approve dismissal. Compare Kelly v. Guinn, 456 F.2d 100, 111 (9th Cir. 1972); Monroe v. Board of Commissioners, *supra*, 453 F.2d at 263. Rather the situation was governed by the well established principle, recently reaffirmed in Perry v. Sindermann, 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972), where the Supreme Court stated that it had "twice before . . . specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. Shelton v. Tucker, *supra* [1960]; Keyishian v. Board of Regents, *supra* [1967]."

Judge Blumenfeld, in considering whether defendants were state officials who had a defense of good faith to an action for damages under § 1983, cf. Pierson v. Ray, 386 U.S. 547, 555, 87 S.

Ct. 1213, 18 L.Ed.2d 288 (1967), found it unnecessary to decide that question because "the court does not find that the defendants here have established that they acted in good faith." Under these circumstances, where the constitutional rights of the appellant were clear at the time of the appellees' conduct, as well as at the time of suit, where the long course of vindication of those rights caused by the appellees should, as a consequence, have been unnecessary, and where the award of fees will help prevent inhibition of the future exercise of such rights at public institutions by other public employees, the financial burden of litigation should be removed "from the shoulders of the plaintiff seeking to vindicate the public right." Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972). See also Lee v. Southern Home Sites Corp., 444 F.2d 143, 147–148.

Affirmed in part, reversed in part, and remanded for determination of reasonable attorneys' fees. The costs of this appeal are awarded to appellant.