Geneva **DASHER** et al.

v.

The **HOUSING AUTHORITY OF** the **CITY OF ATLANTA, GEORGIA**, et al.

**Civ. A. No. 19244.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 16, 1974.

---

Harmon & Smith, Archer D. Smith, III, and Tyrone M. Bridges, Atlanta, Ga., for plaintiffs.

John W. Stokes, Jr., U. S. Atty., Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for defendant HUD, James T. Lynn.

Henry L. Bowden, Henry R. Bauer, Jr., Atlanta, Ga., King & Spalding, Jack H. Watson, Jr., and C. David Vaughan, Atlanta, Ga., for Housing Authority of City of Atlanta.

## ORDER

EDENFIELD, Chief Judge.

This lawsuit arose out of the application of the Uniform Relocation Assist-

ance and Real Property Acquisition Policies Act of 1970 (hereinafter referred to as the "Uniform Relocation Act") to persons displaced by City of Atlanta (hereinafter "City") housing code enforcement in a section of the City which is known as the Model Cities area. The Model Cities area is that part of Atlanta which has been designated in accordance with federal law as a target area for redevelopment. This case concerns the payment of various types of benefits to persons in the Model Cities area who are required to relocate because they live in houses or apartments which do not meet the City's housing code standards. Named plaintiffs are twelve displaced tenants who were displaced from a substandard apartment complex during the period of July–August 1971. These plaintiffs initiated this action, originally styled as a class action, seeking damages, attorneys' fees, an audit of all of the relocation activities in the Model Cities area, payment of all sums allegedly due under the Uniform Relocation Act, and injunctive relief. Plaintiffs alleged that two of the defendants, the Housing Authority of the City and the City, have not complied with all the requirements of the Uniform Relocation Act. The gravamen of plaintiffs' complaint is that defendants have neither paid relocation benefits nor provided advisory assistance to all members of the purported class of approximately 500 persons in the Model Cities area who have been displaced by city code enforcement from 1971 to the present.

Unable to find a single factual or legal issue common to the members of plaintiffs' alleged class, this court denied class action status to the suit on July 9, 1974. On August 28, 1974 a consent order was entered in the case constituting a full and final adjudication of all claims by the named plaintiffs. The consent order was agreed upon by the parties apparently after a survey, conducted under the auspices of all parties but at the defendants' expense, revealed various problems in the administration of the relocation procedures employed by defendants. Various administrative recommendations for the program were made as a result of the survey and later adopted. Pecuniary settlements or provisions therefor were also made a part of the order for qualified named plaintiffs and an administrative settlement was reached with regard to other displacees who had not received their dislocation benefits and were not involved in this litigation. In view of the consent order, the only legal issue remaining is that of whether plaintiffs are entitled to attorney fees.

The defendants claim that attorneys' fees should not be awarded in this case because: the Uniform Relocation Act makes no provision for such an award as compared to other public interest legislation which explicitly provides for attorney fees; the Act merely confers statutory benefits and does not advance any constitutional right of the beneficiaries thereof; and the defendants, not the plaintiffs, are the parties who found and solved the administrative deficiencies which caused plaintiffs to be bypassed for relocation benefits.

Plaintiffs claim that attorneys' fees are justified in this case under any one of three theories: the "common benefit" doctrine; the private attorney-general theory; and because of the defendants' obstinate and obdurate behavior in this litigation. The court is persuaded that plaintiffs are entitled to an award of attorneys' fees under the private attorney-general concept.[1] That

1. The "common benefit" rationale is utilized to award attorney fees to a plaintiff who successfully prosecutes a legal claim and thereby bestows some benefit, either in monetary terms or in the form of injunctive relief, on a number of other people. The award, however, is not figured as an amount over and above the relief which defendants must render. Rather, the court simply taxes the cost of the fees to the class of persons benefited.

theory holds that a successful private party plaintiff is entitled to the recovery of his legal expenses, including attorney fees, if he has advanced the policy inherent in public interest legislation on behalf of a significant class of persons. *See, e. g.,* Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972); Lee v. Southern Home Sites Corp., 429 F.2d 290 (5th Cir. 1970). The award of court costs and attorney fees to a "private attorney general" has been characterized as part of the federal courts' inherent power, when sitting in equity, where "exceptional circumstances call for their allowance in order to do justice between the parties . . ." *Lee, supra* at 295. The court is, of course, sitting in equity in this case and, for the reasons that follow, the circumstances are sufficiently compelling to permit the award of court costs and plaintiffs' attorney fees.

## I.

■ In the instant case the court is convinced of the strong congressional expression of the human need and the national social interest in providing model cities displacees with relocation benefits. Title II of the Uniform Relocation Act provides: "The purpose of this subchapter is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of

programs designed for the benefit of the public as a whole." 42 U.S.C. § 4621. The policy thus expressed reflects a recognition that while the Model Cities programs are designed for the benefit of all the people, the few who must physically suffer in terms of relocating their homes should not be put to the cost of that relocation as well. Nonetheless, the defendants, the parties charged by the law with the duty of protecting the interests of displacees, contend that the plaintiffs are not entitled to the attorney fees which these plaintiffs had to expend in order to obtain their statutory entitlements. Indeed, the defendants apparently state that plaintiffs can adequately compensate their attorneys out of the relocation benefits which they received as a result of this litigation. The court can find no merit in this position. The plaintiffs should have received their benefits some two years ago. The value of those benefits today may or may not reimburse the plaintiffs for whatever expense they incurred as a result of the defendants' failure to make timely payment. Indeed, it would not be surprising if several plaintiffs have simply been deprived of standard housing for part or all of the last two years because of their financial inability to rent or purchase such housing. Thus, denying an award of attorney fees under these circumstances quite literally takes away a good deal of the benefits to which they were entitled under the law.[2]

*See, e. g.,* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) and cases cited therein; *see also* Hall v. Cole, 412 U.S. 1, 4–9, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), where the Court characterizes the common benefit rationale as "fee shifting".

Some courts view the common benefit rationale and the private attorney-general theory as merged where the public interest is vindicated and thus award the fees as part of the relief ordered. *See, e. g.,* Natural Resources Defense Council, Inc. v. Environmental Protection Agency, 484 F.2d 1331 (1st Cir. 1973).

This is essentially the view which the court adopts herein. However, technically, the award is properly characterized as being made under the private attorney-general theory.

The court does not make any finding with respect to the defendants' alleged obstinate and obdurate behavior throughout the course of this litigation.

2. Plaintiffs currently have a contingent fee contract with their attorneys. However, it is the court's understanding that any amount received by the attorneys as a result of this motion shall be applied against the amount due under the contract.

The defendants also claim, however, that the public in general has not received any benefit as a result of these proceedings. They contend that this lawsuit has only benefited, monetarily, certain specifically named persons in amounts which will subsequently be subject to precise calculation. Any nonpecuniary benefits arising out of the administrative settlement agreement will be minimal, according to defendants, since they are primarily applicable to City Housing Code displacees of the Model Cities area and that program will terminate on January 1, 1975.

The defendants' position is failing in several respects. Title II of the Uniform Relocation Act enunciates a clear policy of providing assistance to persons displaced by the Model Cities program. Certainly these plaintiffs have effectuated that policy with respect to themselves. They have also succeeded in establishing effective administrative procedure for persons who might require relocation assistance because of Model Cities. The emphasis the defendants place on whether the public has benefited as a result of this litigation is simply not based on sound reasoning. The defendants claim that since only a few people received any monetary assistance and since the administrative procedures adopted will only be of use until the January 1, 1975 termination date of the Model Cities program, the public at large were in no sense the beneficiaries of this litigation. The court cannot agree. The very purpose of Title II of the Uniform Relocation Act was to assist those few who must be displaced from their housing for the benefit of the public. The protection of the rights of those persons whose interests Title II was designed to serve is thus crucial to the scheme of the Model Cities program. When their rights are secure the public is necessarily served. However, if their rights are in jeopardy the program fails and the public interest is abused.

■ The relevance of the termination date of the current Model Cities program is not apparent. The court simply does not understand the defendants' notion of what constitutes the "public". The defendants apparently put great stock in some sort of quantitative approach— how many people will benefit. To the court, this is clearly an uncertain standard. Rather, the question should be: Has the public interest, as expressed in the statute under which suit is brought, been protected or furthered? In this case, the answer is in the affirmative.

## II.

■■ The absence of an explicit authorization for attorney fees in the statute under which suit is brought is not necessarily a bar to the award where the interests of the public which the legislation is designed to serve are sufficiently compelling. *See, e. g.*, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 2 L.Ed.2d 593 (1970); Cooper v. Allen, *supra;* Lee v. Southern Home Sites Corp., *supra.* Nonetheless, defendants claim that since Title III of the Uniform Relocation Act, 42 U.S.C. §§ 4651–4655, makes provision for attorney fees, the absence of such a provision in Title II demonstrates a congressional intent to preclude such an award. Recently the Fifth Circuit addressed itself to just such an argument in a suit brought under a section of the Truth in Lending Act, 15 U.S.C. § 1635, which provides the consumer with an automatic right of rescission in credit transactions wherein the creditor takes a security interest in realty utilized as a residence. The rescission right extends over a period of three days following either the consummation of the transaction or delivery of the disclosures required under the Act, whichever is later. There is, of

course, no provision in Section 1635 for attorney's fees. In contrast, the civil liability section of the Truth in Lending Act, 15 U.S.C. § 1640, provides that the consumer may sue a creditor who fails to make required cost of credit disclosures for civil penalties and recover attorney fees as well. In Sosa v. Fite, 498 F.2d 114 (5th Cir. 1974), the Fifth Circuit noted that Congress probably never contemplated that consumers would be forced to sue for their rescission rights. The court also observed the strong public policy embodied in the Truth in Lending Act and concluded, "[Plaintiff] has therefore effectuated a strong congressional policy and is entitled to attorneys' fees, in the exercise of the court's discretion, even though the statute sued under does not expressly provide for such an award." At 121. In support the court cited Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 2 L.Ed.2d 593 (1970) (absence of authorization for attorney's fee award under § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), would not preclude such an award, despite the presence of such a provision in other sections of the Act when circumstances make such an award appropriate); Long v. Georgia Kraft Co., 455 F.2d 331 (5th Cir. 1972) (court noted inherent power of court to award attorney's fees where the public interest is vindicated regardless of whether there is a statutory provision therefor); Lee v. Southern Home Sites Corp., *supra* (suit brought under 42 U.S.C. § 1982, racial discrimination in the sale of housing, attorney's fees award permitted despite lack of statutory authorization therefor); Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972), aff'd 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (attorney fees awarded in a reapportionment suit).

*Sosa* is clearly on point in this case. Here, as in *Sosa*, the rights involved were created by the national legislature and do not flow from the Constitution.

More importantly, plaintiffs' efforts have resulted in effectuating a strong congressional policy which redounds to the benefit of all the citizens of Atlanta. Indeed, two cases from the Northern District of California have already taken the opportunity to rule that the interests advanced under Title II of the Uniform Relocation Act are sufficiently compelling to justify an award of attorney fees to persons who vindicate those interests through litigation. La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972); Tenants & Owners in Opposition to Redevelopment v. H.U.D., C.A. No. C69–324 (N.D.Cal. Jan. 30, 1974).

### III.

Finally, the defendants state that it was their efforts which ultimately resulted in the relief which plaintiffs received. The defendants claim that the allegations in plaintiffs' complaint were unfounded and could not have been supported had a trial of this case been necessary. Regardless of the merit of these contentions, indeed, assuming they are true, it appears obvious to the court that defendants took whatever action they did solely because of the persistence of plaintiffs' attorneys. It is, however, of some interest to note exactly what the defendants discovered which, according to the defendants, belies the plaintiffs' allegations of unequal application of the Uniform Relocation Act. The defendants take credit for resolving this controversy because after two years of litigation they found that "existing federal, city and state regulations do not provide a means through which the Housing Authority can be notified of the names and addresses of persons in need of relocation assistance before such persons vacate their units." Defendants' Memorandum in Explanation of the Consent Order and Administrative Settlement Agreement, at 1–2. Thus, the defendants are claiming that at the time this lawsuit arose and for some two years thereafter, they

had no means of knowing who was being displaced by the Model Cities program and not one idea as to who qualified and was in need of relocation assistance. The fact that plaintiffs did not base their lawsuit on this premise is of no surprise to the court. Indeed, the court is thoroughly amazed that the administration of a program as significant as Model Cities failed to establish prior to this time some means of discovering exactly who the program was designed to assist. Thus the defendants are actually admitting, whether they realize it or not, that they utterly failed in establishing the most simplistic, basic and fundamental part of their program. Plaintiffs, of course, were merely aware that they qualified for benefits but had not received them. Their pursuit of those benefits was the catalyst which compelled defendants to consider and correct deficiencies in Atlanta's Model Cities program. All of the citizens in this city will benefit as a result of the work of these plaintiffs and under these circumstances, equity compels an award of fees for the plaintiffs' attorneys. Borrowing an observation made by the court in Sims v. Amos, *supra* at 694: "If, pursuant to this action, plaintiffs have benefited their class and have effectuated a strong congressional policy, they are entitled to attorneys' fees regardless of defendants' good or bad faith. . . . Indeed, under such circumstances, the award loses much of its discretionary character and becomes a part of the effective remedy a court should fashion to encourage public-minded suits . . . and to carry out congressional policy. . . ."

The plaintiffs' motion for an award of attorneys' fees is hereby granted. The Clerk is directed to set this case down for a hearing at 10:00 o'clock, A.M., on November 27, 1974, in Room 318, Old Post Office Building, Atlanta, Georgia, as to the amount to be awarded.

So ordered.