855 F.2d 37
 57 USLW 2126, 22 Soc.Sec.Rep.Ser. 650,
Unempl.Ins.Rep. CCH 14108A
 Dale WELLS, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
Appeal of John S. HOGG (Four Cases).
William OLIVER, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
William HLYWA, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
Joseph J. GEMELLI, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health and Human Services,
Defendant-Appellee.
 Nos. 1166, 1165, 1167 and 1133.
Dockets 88-6048, 88-6046, 88-6050 and 88-6052.
 United States Court of Appeals,
Second Circuit.
 Argued May 16, 1988.
Decided Aug. 9, 1988.
 
 John B. Duggan, Greer, S.C., for appellant Hogg.
 John S. Hogg, Hamilton, N.Y., for plaintiffs-appellants Wells, Oliver, Hlywa and Gemelli.
 Cathy J. Neustein, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, New York City, Peter O'Malley, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, New York City (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., Ronald E. Robertson, Gen. Counsel, Barbara Lewis Spivak, Deputy Chief Counsel, U.S. Dept. of Health and Human Services, New York City, of counsel), for defendant-appellee.
 Susan Millington Campbell, Campbell, Patrick & Chin, New York City, for amicus curiae New York Social Sec. Bar Ass'n.
 Before MESKILL and WINTER, Circuit Judges, and McCURN, District Judge.*
 MESKILL, Circuit Judge:
 
 
 1
 In these four appeals, which we have considered together, we must resolve several troublesome and recurring issues arising out of the awarding of attorney's fees under the applicable provision of the Social Security Act (SSA), 42 U.S.C. Sec. 406(b) (1982). Specifically, we must consider the relationship between the SSA fee provision and an analogous provision of the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412(d) (1982 & Supp. IV 1986), and we must decide what standards should be applied in assessing the "reasonableness" of fees awarded under the SSA. We also must consider whether the Secretary of Health and Human Services (the Secretary) should be held liable in certain of these cases for so-called "bad faith" fees under 28 U.S.C. Sec. 2412(b) (1982 & Supp. IV 1986).
 
 
 2
 In each of these four cases, the plaintiff-appellant sought review under 42 U.S.C. Sec. 405(g) (1982) of the Secretary's decision to terminate disability benefits paid pursuant to 42 U.S.C.A. Sec. 423 (West 1983 & Supp.1988). After the cases were remanded to the Secretary for further review pursuant to the Social Security Disability Benefits Reform Act of 1984 (the Reform Act), Pub.L. No. 98-460, 98 Stat. 1794 (1984), the Secretary found that the plaintiffs' disabilities were continuing and awarded past-due benefits. The plaintiffs then sought attorney's fees under both the SSA and the EAJA. In three of the four cases, the plaintiffs also sought additional "bad faith" fees under 28 U.S.C. Sec. 2412(b). The United States District Court for the Northern District of New York, Munson, C.J., granted EAJA fees in all four cases, concluding that the plaintiffs were prevailing parties and that the Secretary had failed to show that his position in the litigation was substantially justified. Chief Judge Munson refused, however, to grant the parallel applications for fees under 42 U.S.C. Sec. 406(b), simply noting in two of his four separate opinions that any award of SSA fees would be "nearly identical" to the EAJA fees. Finally, the district court refused to grant any "bad faith" fees. For the following reasons, we now affirm in part, reverse in part and remand for further proceedings.
 
 BACKGROUND
 
 3
 The four plaintiffs-appellants involved in these cases are Dale Wells, William Oliver, William Hlywa and Joseph J. Gemelli. The facts of their cases are similar in many respects and will only be discussed here insofar as they are relevant to the issues presented on appeal. Prior to 1981, all four appellants were receiving disability insurance benefits pursuant to 42 U.S.C. Sec. 423. Then, in 1981 and 1982, the Secretary reached individual decisions to terminate those benefits. After exhausting all administrative appeals, the appellants initiated the instant actions in the district court seeking review of the agency decisions pursuant to 42 U.S.C. Sec. 405(g). All four appellants were represented by Attorney John S. Hogg, who is also an appellant in these actions. In all four instances, the appellants agreed to pay Hogg for his representation on a contingent-fee basis, with Hogg receiving twenty-five percent of any past-due benefits awarded.
 
 
 4
 While all four actions were pending in the district court, Congress passed the Reform Act, section 2 of which established new standards for determining whether disability benefits may be terminated. See 98 Stat. at 1794-99. Section 2(a) of the Reform Act provided, inter alia, that evidence of "medical improvement" must be considered in termination cases. See id. at 1794 (codified at 42 U.S.C. Sec. 423(f)(1)(A)). In addition, section 2(d)(2) of the Reform Act provided that actions pending in the district courts on September 19, 1984 that "relat[ed] to medical improvement" should be remanded to the Secretary for reconsideration in accordance with the new standards on termination. See 98 Stat. at 1797-98. In late 1984 and early 1985, the district court ordered the instant cases remanded to the Secretary pursuant to the terms of the Reform Act. Ultimately, the Secretary restored the benefits of each of the appellants and the four actions pending before the district court were dismissed in 1987 by stipulations of the parties.
 
 
 5
 Hogg then filed motions in each case seeking attorney's fees under both the SSA, 42 U.S.C. Sec. 406(b), and the EAJA, 28 U.S.C. Sec. 2412(d). Hogg indicated that if the court decided in any case to grant fees under both provisions, the smaller of the two amounts awarded should be given to the client. In addition, in Hlywa and Gemelli, Hogg sought fees pursuant to 28 U.S.C. Sec. 2412(b), arguing that the Secretary had acted in bad faith in opposing the claimants' actions on the merits and in withholding benefits over an extended period of time. In Oliver, after the Secretary opposed Hogg's initial fee application, the attorney sought fees under section 2412(b) and sanctions pursuant to Fed.R.Civ.P. 11 for the Secretary's bad faith in opposing the fee request. There was no request for section 2412(b) fees in Wells.
 
 
 6
 In four separate written opinions dated December 15, 1987, Chief Judge Munson awarded Hogg attorney's fees pursuant to the EAJA, 28 U.S.C. Sec. 2412(d). Citing Vitale v. Secretary of Health and Human Services, 673 F.Supp. 1171, 1175-78 (N.D.N.Y.1987), the district court concluded that the four appellants should be considered "prevailing parties" for purposes of the EAJA. See 28 U.S.C. Sec. 2412(d)(1)(A). The district court also concluded that the Secretary had failed to meet his burden to make a "strong showing" that his actions in terminating or denying benefits were substantially justified. See Environmental Defense Fund, Inc. v. Watt, 722 F.2d 1081, 1085 (2d Cir.1983). The Secretary does not challenge either of those conclusions in this appeal. In calculating the EAJA fees, the district court then employed a rate of $90 per hour. Chief Judge Munson concluded in each case that Hogg had provided the necessary proof supporting a cost-of-living adjustment above the statutory rate of $75 per hour. See 28 U.S.C. Sec. 2412(d)(2)(A). As to the SSA fees sought pursuant to 42 U.S.C. Sec. 406(b), the district court simply concluded in Oliver and Wells that any award of such fees would be "nearly identical" to the EAJA fees. Chief Judge Munson therefore denied the motions for the SSA fees. In Hlywa, the district court denied the request for SSA fees without comment; in Gemelli, the district court did not allude at all to Hogg's request for SSA fees. Finally, in Oliver, Hlywa and Gemelli, Chief Judge Munson denied all requests for "bad faith" fees pursuant to 28 U.S.C. Sec. 2412(b). This appeal followed, with the appellants challenging the district court's refusal to award fees pursuant to either 28 U.S.C. Sec. 2412(b) or 42 U.S.C. Sec. 406(b).
 
 DISCUSSION
 
 7
 We first must consider under what circumstances an attorney who has represented a successful litigant may seek fees under both the EAJA, 28 U.S.C. Sec. 2412(d), and the SSA, 42 U.S.C. Sec. 406(b). Then, we must decide how the calculation of the fees under those two provisions should relate and how the fees should be allocated if fees are awarded under both statutes. Specifically, we must decide whether or not fees awarded under the SSA may be enhanced to reflect the risks inherent in a contingent-fee arrangement between a lawyer and his or her client. Finally, we must decide if the district court erred in refusing to award additional fees pursuant to 28 U.S.C. Sec. 2412(b).
 
 
 8
 A. Dual Fee Applications Under the EAJA and the SSA
 
 1. The Relationship of the Two Statutes
 
 9
 An attorney who has represented a successful claimant before the district court in a matter arising under Title II of the SSA may apply to the court for "a reasonable fee ..., not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of [the court's] judgment." See 42 U.S.C. Sec. 406(b); see also Bowen v. Galbreath, --- U.S. ----, ----, 108 S.Ct. 892, 893-95, 99 L.Ed.2d 68 (1988). The effect of the provision, which was originally passed in 1965, is threefold. It "fix[es] a maximum percentage for contingent fees; [it] permit[s] recovery of such fees only out of past due benefits; and [it] require[s] court approval for whatever amount of such fees should be paid." Coup v. Heckler, 834 F.2d 313, 321 (3d Cir.1987). See also Ocasio v. Schweiker, 540 F.Supp. 1320, 1321-22 (S.D.N.Y.1982) (Weinfeld, J.) (indicating that section 406(b) incorporates, but places limits on, the practice of employing contingent-fee arrangements in certain social security litigation). The principal test to be employed by the district court in setting any such fee is its "reasonableness." See Kemp v. Bowen, 822 F.2d 966, 968 (10th Cir.1987).
 
 
 10
 Under the EAJA, prevailing parties in litigation against the United States government may recover attorney's fees at statutory rates unless the government's position in the litigation was substantially justified. See 28 U.S.C. Sec. 2412(d)(1)(A). See also Environmental Defense Fund, 722 F.2d at 1083. The statute specifically provides that fees "shall not be awarded [at a rate] in excess of $75 per hour unless the [district] court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. Sec. 2412(d)(2)(A)(ii). See also Pierce v. Underwood, --- U.S. ----, ---- - ----, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988). Unlike the SSA, which leaves the district court with the discretion to award a "reasonable" fee with a cap on the amount, the EAJA imposes a cap on the hourly rate at which fees may be awarded in most cases. See id. at ----, 108 S.Ct. at 2553-54.
 
 
 11
 The principal difference between the SSA fee provision and the EAJA is that EAJA fees are paid by the government to the litigant to defray the cost of legal services whereas the SSA fees are paid by the litigant to the attorney from the past-due benefits awarded. See Watford v. Heckler, 65 F.2d 1562, 1566 (11th Cir.1985); O'Grady v. Secretary of the U.S. Dep't of Health and Human Services, 661 F.Supp. 1030, 1036-38 (E.D.N.Y.1987). See also Coup, 834 F.2d at 324. Thus, while the award of EAJA fees is based on a waiver of the normal principles of sovereign immunity, see, e.g., Long Island Radio Co. v. NLRB, 841 F.2d 474, 477 (2d Cir.1988); Coup, 834 F.2d at 324, the SSA fee provision is simply "a statutory interference with the attorney client contractual relationship[,] which would otherwise be determined by the marketplace for legal services," id. at 324.
 
 
 12
 Congress clearly intended that the EAJA fee-shifting statute should only augment, not supplant, other pre-existing fee provisions such as that in the SSA. See Act of August 5, 1985, Pub.L. No. 99-80, Sec. 3, 99 Stat. 183, 186 (1985) (codified as "savings provision" at 28 U.S.C. Sec. 2412 (Supp. IV 1986)); H.R.Rep. No. 120, 99th Cong., 1st Sess. 19-20, reprinted in 1985 U.S.Code Cong. & Admin.News 132, 148-49. See also H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 15, reprinted in 1980 U.S.Code Cong. & Admin.News 4953, 4994 (the EAJA "is not intended to affect or limit the computation of reasonable attorney['s] fees under any other provision of law authorizing an award of fees under a particular statute ... designed to promote private enforcement of that [a]ct"). Recognizing that fact, most courts have held that parties in proper cases may seek fees under both provisions, as long as the attorney, if successful, gives the smaller of the two awards to his or her client. See, e.g., Kemp, 822 F.2d at 968; Weakley v. Bowen, 803 F.2d 575, 580 (10th Cir.1986); Watford, 765 F.2d at 1566 & n. 5; Guthrie v. Schweiker, 718 F.2d 104, 107-08 & n. 11 (4th Cir.1983). We have never ruled on the proper treatment of dual fee applications under the EAJA and the SSA, however, and district courts in this Circuit have adopted different approaches to the question. Compare Barriger v. Bowen, 673 F.Supp. 1167, 1170 (N.D.N.Y.1987) (allowing dual application), and O'Grady, 661 F.Supp. at 1036-38 (same), with Allen v. Heckler, 588 F.Supp. 1247, 1250-51 (W.D.N.Y.1984) (suggesting that the EAJA and the SSA provisions are mutually exclusive).
 
 
 13
 We believe that Congress clearly intended the two statutes to work in conjunction and that dual fee applications are not improper as long as the lesser of any two amounts awarded goes to the attorney's client. See Pub.L. No. 99-80, Sec. 3, 99 Stat. at 186. Indeed, whenever a credible argument can be made that the government's position in opposing certain social security benefits was not substantially justified, the attorney working under a contingent-fee agreement can best defray the client's cost of legal services by seeking both EAJA and SSA fees. See Taylor v. Heckler, 608 F.Supp. 1255, 1256-57, 1259-61 (D.N.J.1985). We therefore hold that district courts must entertain dual fee applications under the SSA and the EAJA in appropriate cases.
 
 2. Calculation of the Fees
 
 14
 a. The EAJA
 
 
 15
 The EAJA establishes a statutory rate of $75 per hour unless the court determines that an increase in the level of pay is justified by "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. Sec. 2412(d)(2)(A)(ii). The Supreme Court has recently held that the latter clause, allowing an increase for certain "special factor[s]," must be interpreted narrowly and cannot be read to encompass situations in which normally skilled and qualified attorneys are simply in short supply. See Pierce, --- U.S. at ---- - ----, 108 S.Ct. at 2553-54. Moreover, the Court held that the contingent nature of a fee could not constitute a "special factor" allowing district courts to increase the $75 per hour rate. See id. at ----, 108 S.Ct. at 2554. The Court noted that the EAJA, a statute of broad application in litigation involving the government, is "not directed [at] a category of litigation that can be identified in advance by the contingent-fee attorney." Id. Moreover, the EAJA "is not designed to reimburse reasonable fees without limit." Id. Notwithstanding the narrowing of the "special factor[s]" language in Pierce, however, it remains clear that the EAJA's $75 per hour rate can be increased to reflect a demonstrable increase in the cost of living since the date of the statute's effectiveness. See, e.g., Parks v. Bowen, 839 F.2d 44, 45-46 (2d Cir.1988) (per curiam) (awarding EAJA fees at $93 per hour). We hold that Chief Judge Munson was acting well within his discretion in deciding to award EAJA fees at a rate of $90 per hour.
 
 
 16
 Having calculated the EAJA fee awards, however, the district court summarily denied any fees under the SSA. In two of the four cases at issue here, Chief Judge Munson simply concluded that any SSA fees would be "nearly identical" to those awarded under the EAJA; in the two other cases, he offered no explanation for his decision. We must consider, therefore, whether the calculation of fees under the SSA differs significantly from that under the EAJA and whether some independent consideration of the amount of any such fee award was necessary in these cases.
 
 
 17
 b. The SSA
 
 
 18
 When a statute mandates an award of "reasonable" fees, as does the SSA, such fees typically must be set at the prevailing market rates in the relevant community. See, e.g., Blum v. Stenson, 465 U.S. 886, 892-96, 104 S.Ct. 1541, 1545-48, 79 L.Ed.2d 891 (1984) (42 U.S.C. Sec. 1988); Miele v. New York State Teamsters Conference Pension & Retirement Fund, 831 F.2d 407, 408-09 (2d Cir.1987) (ERISA). Moreover, when a statute calls for an award of "reasonable" fees, the district court, in determining the prevailing market rates, may not simply rely on specific hourly rates mandated by other statutes, such as the EAJA or the Criminal Justice Act, 18 U.S.C. Sec. 3006A (1982 & Supp. IV 1986). See Coup, 834 F.2d at 324; Miele, 831 F.2d at 408-09. If the record in a particular case is unclear as to what criteria the district court used in setting reasonable fees, or if it appears that the court impermissibly relied on inapplicable statutory standards, then a remand for clarification and recalculation is necessary. See id. at 408-10.
 
 
 19
 From the records in the instant cases, it does not appear that the district court engaged in any independent analysis of what would constitute a "reasonable" fee award under 42 U.S.C. Sec. 406(b). In fact, in simply concluding in Oliver and Wells that any SSA fees would be "nearly identical" to the EAJA fees, the district court appears to have impermissibly transported the EAJA rate ceiling into his assessment of what would be reasonable under the SSA. We believe that this necessitates a remand. As we have already discussed, the fee provisions of the SSA and the EAJA are independent statutes even though they may be employed together in appropriate cases. When fees are awarded under both statutes, the proper course is to award the smaller amount to the client. It is therefore necessary in cases involving proper dual fee applications to compute the SSA fee independently, with reference to the prevailing market rates in the relevant community.
 
 
 20
 Generally, the first step in the calculation of reasonable attorney's fees is the determination of the so-called "lodestar" amount. See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 563-64, 106 S.Ct. 3088, 3097-98, 92 L.Ed.2d 439 (1986) (Delaware Valley I ); Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 12-13 & n. 56 (D.C.Cir.1984), cert. denied, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1099 (2d Cir.1977) (Grinnell II ); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 166-69 (3d Cir.1973) (Lindy I ). The lodestar amount represents the number of hours reasonably worked on a case multiplied by the reasonable hourly rate. See Delaware Valley I, 478 U.S. at 564, 106 S.Ct. at 3097 (citing Lindy I, 487 F.2d at 167); Laffey, 746 F.2d at 12-13; Grinnell II, 560 F.2d at 1099. See also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Certain variable criteria such as the novelty of a case and the individual attorney's skill are subsumed into this initial calculation. See Delaware Valley I, 478 U.S. at 564, 106 S.Ct. at 3098; Blum, 465 U.S. at 898-900, 104 S.Ct. at 1548-50. Beyond that, additional enhancement is permissible in certain exceptional cases. See Delaware Valley I, 478 U.S. at 565, 106 S.Ct. at 3098; Blum, 465 U.S. at 899-901, 104 S.Ct. at 1549-50. In these appeals, we must decide if enhancement is permissible under 42 U.S.C. Sec. 406(b) to reflect the risks inherent in a contingent-fee agreement--namely, the risks of loss and nonpayment and the risk of delay in receiving payment.
 
 
 21
 Several courts of appeals have held that the risks associated with contingent-fee agreements may be taken into account in enhancing attorney's fees under certain statutory provisions, including the SSA provision at issue here. See Coup, 834 F.2d at 324-25 (SSA); Lewis v. Coughlin, 801 F.2d 570, 573-76 (2d Cir.1986) (42 U.S.C. Sec. 1988); Blankenship v. Schweiker, 676 F.2d 116, 118 (4th Cir.1982) (SSA); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir.1974) (Title VII). District courts in this Circuit, however, have differed in their views of the proper role of contingency factors in calculating fees pursuant to the SSA. Compare Modica v. Secretary of Health and Human Services, 581 F.Supp. 39, 40 (E.D.N.Y.1984) (refusing to consider contingency factors), with Allen, 588 F.Supp. at 1249-50 (noting that contingency factors are permissible considerations in setting fees under 42 U.S.C. Sec. 406(b)). See also Penny v. Heckler, 623 F.Supp. 1240, 1243 (E.D.N.Y.1986) (suggesting that enforcement of contingent-fee agreements in social security cases may be "reprehensible"). The Supreme Court recently addressed the issue of contingency enhancement when considering fee awards under the Clean Air Act, 42 U.S.C. Sec. 7604(d) (1982). In Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, --- U.S. ----, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (Delaware Valley II ), a plurality of the Court held that the risk of loss associated with contingent-fee agreements is an impermissible factor for enhancing attorney's fees "under the usual fee-shifting statutes." See id. at ----, 107 S.Ct. at 3087. As for the risk of nonpayment, the plurality held that such enhancement should be reserved for exceptional cases. Id. Specifically, the plurality held that such an adjustment must be supported by evidence, on the record, that "without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." Id. at ----, 107 S.Ct. at 3089.
 
 
 22
 Justice O'Connor wrote separately in Delaware Valley II, concurring in part and concurring in the judgment. She joined the four dissenters in holding that enhancement for all the risks of contingency was intended by Congress when it passed such fee-shifting provisions as 42 U.S.C. Sec. 1988 and that in the Clean Air Act. See id. at ----, 107 S.Ct. at 3089; see also id. at ----, ---- - ----, 107 S.Ct. at 3091, 3095-3100 (Blackmun, J., dissenting). Moreover, Justice O'Connor joined the dissenters in concluding that "compensation for contingency must be based on the difference in market treatment of contingent fee cases as a class, rather than on an assessment of the 'riskiness' of any particular case." Id. at ----, 107 S.Ct. at 3089. She indicated, however, that she would reserve contingency enhancement for a narrower class of cases than the dissenters, limiting such a step to those situations in which the unavailability of such enhancement would create " 'substantial difficulties in finding counsel in the local or other relevant market.' " See id. at ---- - ----, 107 S.Ct. at 3089-91 (quoting plurality opinion). The dissenters, by contrast, would have allowed enhancement whenever an attorney faced a risk of nonpayment that could not be mitigated in any other way. See id. at ---- - ----, 107 S.Ct. at 3095-3100.
 
 
 23
 Since Delaware Valley II was decided, the Third Circuit, in Coup v. Heckler, has considered whether enhancement for the risks of contingency is appropriate under 42 U.S.C. Sec. 406(b). First, the court distinguished the issue before it from that in Delaware Valley II by noting that fees paid to an attorney under the SSA fee provision are paid by the client and not by the government--a factor that influenced the Delaware Valley II plurality. See 834 F.2d at 324. "[A] contingency enhancement [under the SSA] simply recognizes that [a client] was willing to pay more to induce his attorney to take a case where there was a risk of nonpayment." Id. This conclusion follows directly from the Coup Court's earlier observation that 42 U.S.C. Sec. 406(b) does not involve consideration of sovereign immunity, "but rather [is] a statutory interference with the attorney client contractual relationship[,] which would otherwise be determined by the marketplace for legal services." Id.
 
 
 24
 We agree that the considerations that led the Delaware Valley II plurality to limit the use of risk-enhancement factors "under the usual fee-shifting statutes," --- U.S. at ----, 107 S.Ct. at 3087, are inapplicable in the SSA context, where the award of attorney's fees is predicated on a pre-existing, consensual agreement between the attorney and the client. See Wolverton v. Heckler, 726 F.2d 580, 582 (9th Cir.1984) (noting that 42 U.S.C. Sec. 406(b) is not a "fee-shifting" statute). For the same reason, we believe that the instant cases are distinguishable from the Supreme Court's recent decision in Pierce, in which the Court held that the risks of contingency are improper factors for the upward adjustment of the hourly rate ceiling set by the EAJA. See --- U.S. at ----, 108 S.Ct. at 2554. The SSA fee provision itself recognizes that fee arrangements in this area of practice typically are based on a percentage of any past-due benefits ultimately received by the client. Given that reality, and the very real prospects of failure inherent in this field of practice,[1] any reasonable fee must reflect the risks of loss and nonpayment. Otherwise, the fees would not realistically reflect the prevailing market conditions in this entire class of cases and the consequent availability of competent representation. See Delaware Valley II, --- U.S. at ---- - ----, 107 S.Ct. at 3095-3100 (Blackmun, J., dissenting); see also id. ---- - ---- 107 S.Ct. at 3089-90 (O'Connor, J., concurring). Even "[t]he effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services." McKittrick v. Gardner, 378 F.2d 872, 875 (4th Cir.1967) (discussing 42 U.S.C. Sec. 406(b)).
 
 
 25
 We therefore hold that the risks associated with a typical contingent-fee agreement are necessary factors for a district court to consider in setting a reasonable fee pursuant to 42 U.S.C. Sec. 406(b). Moreover, as the Coup Court noted, any enhancement for delay in receiving payment is an additional factor that must be considered separately from the risks of loss and nonpayment generally associated with contingent agreements. See 834 F.2d at 324-25. We refuse, however, to adopt the appellants' recommendation and hold that enhancement for contingency factors should be an automatic numerical multiplier in all cases, based on some prevailing statistical success rate. See note 1, supra. Nor do we believe that the contingency percentage embodied in any given attorney-client contract should be treated by the district court as presumptively "reasonable" for purposes of 42 U.S.C. Sec. 406(b). Rather, district courts must have some discretion in individual cases to decide how much weight to assign to the risks assumed by an attorney. The court may consider a variety of factors, including the success rate in social security cases in general or in a particular subclass of cases. But, the district court may not simply refuse to employ a contingency enhancement on the ground that it is an unfair, impermissible or "reprehensible" factor. Cf. Penny, 623 F.Supp. at 1243; Modica, 581 F.Supp. at 40. In any case in which the pre-existing fee agreement is contingent in nature, the court must articulate, on the record, the weight assigned to the risks of contingency in its calculation of a fee. Such decisions will then be subject to review under an abuse of discretion standard. Cf. Pierce, --- U.S. at ---- - ----, ----, 108 S.Ct. at 2546-49, 2551-53.
 
 B. Bad Faith Fees
 
 26
 Finally, we must consider the appellants' claims in three of these four cases that Chief Judge Munson erred in refusing to grant additional fees pursuant to 28 U.S.C. Sec. 2412(b) for the Secretary's alleged bad faith. We will not disturb the district court's refusal to grant such fees unless it was an abuse of discretion. See, e.g., Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir.1985), cert. denied, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986).
 
 Section 2412(b) provides that:
 
 27
 Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 
 
 28
 The prevailing rule under American common law is that parties to litigation pay their own attorney's fees regardless of the lawsuit's outcome. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); Sierra Club, 776 F.2d at 390. However, there is an exception to this general rule when a court determines that an unsuccessful party "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " Alyeska, 421 U.S. at 258-59, 95 S.Ct. at 1622 (quoting F.D. Rich Co. v. United States, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). We have held that an award of fees under the bad faith exception is warranted when "the losing party's claims were 'entirely without color and made for reasons of harassment or delay or for other improper purposes.' " Sierra Club, 776 F.2d at 390 (quoting Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977)). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Id.
 
 
 29
 This common law exception to the general rule regarding fees and costs was codified at 28 U.S.C. Sec. 2412(b) and added to the EAJA in response to congressional concerns that the government be subjected to the same standards that apply to private litigants. See H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 8-9, reprinted in 1980 U.S.Code Cong. & Admin.News 4953, 4986-87. The exception, as codified, stands completely apart from that portion of the EAJA discussed earlier, under which the government may be held liable for fees at certain statutory rates unless its position in litigation is substantially justified. See 28 U.S.C. Sec. 2412(d). Section 2412(b) requires far more egregious conduct on the government's part than is required under section 2412(d) and it exposes the government to liability for costs and fees above and beyond the limit set by section 2412(d). See Barry v. Bowen, 825 F.2d 1324, 1333-34 (9th Cir.1987).
 
 
 30
 Here, the appellants in Oliver argue that the Secretary acted in bad faith in opposing the attorney's various applications for fees. In Hlywa and Gemelli, the appellants argue that the Secretary acted in bad faith in opposing them on the merits. We do not believe that Chief Judge Munson abused his discretion in concluding in each of these instances that such fees were not warranted.
 
 
 31
 First, in Hlywa and Gemelli, the appellants argue principally that the Secretary intentionally delayed the awarding of past-due benefits and failed to follow recognized standards in determining the claimants' eligibility. As the government argues, however, both cases were pending during the period immediately before the passage of the Reform Act, when there was considerable uncertainty regarding the proper standards to be employed in terminating disability benefits. See De Leon v. Secretary of Health and Human Services, 734 F.2d 930, 936 & n. 12 (2d Cir.1984) (decided approximately six months before the passage of the Reform Act). See also H.R.Rep. No. 618, 98th Cong., 2nd Sess. 11, reprinted in 1984 U.S.Code Cong. & Admin.News 3038, 3048 (noting the lack of clear standards before the passage of the Reform Act). Moreover, during the delay following remand, the appellants could have elected to receive interim benefits pursuant to the terms of the Reform Act. See Pub.L. No. 98-460, Sec. 2(e), 98 Stat. 1794 at 1798-99. We have considered the appellants' various arguments regarding the Secretary's alleged bad faith and we have concluded that the district court did not abuse its discretion in declining to award fees pursuant to 28 U.S.C. Sec. 2412(b).
 
 
 32
 We must also consider the claim in Oliver that the Secretary acted in bad faith in opposing the applications for attorney's fees. The appellants contend that the Secretary acted frivolously in opposing their claim that Oliver was a "prevailing party" by virtue of the Secretary's decision to award past-due benefits following the remand. However, there is case law clearly supporting the Secretary's argument. See, e.g., Truax v. Bowen, 842 F.2d 995, 997 (8th Cir.1988) (per curiam). The district court in these cases decided otherwise, choosing to follow cases to the contrary from within this Circuit. See Vitale, 673 F.Supp. at 1175-78. The Secretary chose not to cross-appeal Chief Judge Munson's ruling on this matter, but we hardly think that the original argument can be seen as constituting bad faith.
 
 
 33
 In sum, having reviewed the remainder of the arguments in Oliver, we do not believe that the district court abused its discretion in declining to award fees pursuant to 28 U.S.C. Sec. 2412(b). However, in light of earlier holdings in this opinion regarding the standards to be employed in fee applications under the SSA, we offer a cautionary note regarding the Secretary's role in opposing requests for fees under that statute.
 
 
 34
 The appellants in these cases argue that the Secretary's self-styled role as a "protector" of claimants in fee applications is often markedly inconsistent with his posture in vigorously opposing the payment of benefits. Cf. Gruber v. Bowen, 673 F.Supp. 970, 971 (W.D.Wis.1987). The Secretary, on the other hand, argues that he has an obligation to see that Congress' intent is carried out and to see that claimants are protected from overreaching by their attorneys. See Moore v. Califano, 471 F.Supp. 146, 148-50 (S.D.W.Va.1979), appeal dismissed, 622 F.2d 585 (4th Cir.1980) (mem.). Although the Secretary undoubtedly has some proper role in fee applications, we agree that there can be a "hollow ring" to vigorous, routine opposition to both benefits and fees. See Gruber, 673 F.Supp. at 971. "A request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941. Accordingly, we agree with the Third Circuit's view expressed in Coup that the Secretary's role in opposing fee applications pursuant to 42 U.S.C. Sec. 406(b) "should be no more than to explain what in his judgment [would be] an appropriate fee ... if calculated in accordance with the standards the agency w[ould] apply ... for work before it." See 834 F.2d at 325. If the Secretary's opposition to fees strays significantly beyond those boundaries, then the district courts have discretion to award fees for bad faith pursuant to 28 U.S.C. Sec. 2412(b).CONCLUSION
 
 
 35
 We affirm the district court's calculation of fees pursuant to 28 U.S.C. Sec. 2412(d) and we affirm the denials of bad faith fees pursuant to 28 U.S.C. Sec. 2412(b). We reverse the district court's failure to determine independently whether attorney's fees were also appropriate under 42 U.S.C. Sec. 406(b). We therefore remand these cases to the district court for further proceedings consistent with this opinion. Once appropriate fees under 42 U.S.C. Sec. 406(b) are calculated, the district court should order Attorney Hogg to return the lesser of either that amount or the EAJA award to his clients.
 
 
 
 *
 Honorable Neal P. McCurn, United States District Judge for the Northern District of New York, sitting by designation
 
 
 [1]
 Statistics recently compiled by the Social Security Administration indicate the success rate that social security litigants in general enjoy in seeking federal court review of agency actions. The numbers listed below for each fiscal year indicate the percentage of cases in which the claimant successfully obtained court reversal of agency action or secured agency reversal following a court-ordered remand
 1981 38.3%
1982 33.5%
1983 39.7%
1984 54.7%
1985 45.8%
1986 56.1%
1987 48.4%
 Division of Appellate Assessment, Office of Policy and Procedure, Social Security Administration, Court Remands: Analysis and Recommendations 4 (1987). Appellants suggest that the higher percentages since 1984 may be attributable in part to the high number of remands ordered pursuant to the Reform Act. Even without considering that suggestion, however, the statistics indicate that social security attorneys practicing during those years could reasonably expect, on average, to lose slightly more than half of their cases. We note, of course, that these statistics may well include cases decided under other titles of the SSA not covered by 42 U.S.C. Sec. 406(b). Cf. Galbreath, --- U.S. at ---- - ----, 108 S.Ct. at 893-95.