**John W. McNEILL, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–87–1498E.**

United States District Court,
W.D. New York.

June 2, 1989.

Sharon Osgood, Buffalo, N.Y., for plaintiff.

Gretchen Wylegala, Asst. U.S. Atty., Buffalo, N.Y., for defendant.

#### MEMORANDUM AND ORDER

ELFVIN, District Judge.

Presently before this Court is the discrete question of a "reasonable" attorney fee to be awarded under the Social Security Act ("SSA"), 42 U.S.C. § 406(b). The abovenamed plaintiff had been successful in

his bid for disability benefits in this action and had thereafter moved for payment of attorney's fees from the government pursuant to the Equal Access to Justice Act ("the EAJA"), 28 U.S.C. § 2412, or alternatively from his withheld benefits under the SSA. The motion was construed—in light of the decision in *Wells v. Bowen,* 855 F.2d 37 (2d Cir.1988)—as a dual fee application made under both statutes, and the plaintiff's counsel was awarded $1,740 pursuant to the EAJA and was directed to appear before this Court May 8, 1989 to provide evidence enabling an independent determination of a reasonable fee under the SSA. *McNeill v. Secretary of Health and Human Services,* CIV–87–1498E, 1989 WL 39449 (W.D.N.Y. April 20, 1989).

The plaintiff's counsel, Sharon Anscombe Osgood, Esq., did so appear and submitted evidence in support of her request for $90 per hour in fees. Assistant United States Attorney Gretchen L. Wylegala appeared for the government and indicated that from its perspective $90 is a reasonable fee in this case, that the request for such is comparably on the "low side" of similar requests, and that the government has no objection to an award of fees at such rate.

A "reasonable" fee under the SSA is to be computed "with reference to the prevailing market rates in the relevant community." *Wells v. Bowen, supra,* at 43. Necessarily subsumed within such analysis is the consideration of individualized factors such as the complexity of the case and the attorney's skill. *Ibid.; see Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986). A reasonable hourly rate multiplied by the number of hours reasonably worked supplies the "'lodestar' amount." *Wells v. Bowen, supra,* at 43. Such amount may be enhanced to reflect the risks of non-payment inherent in contingency-fee arrangements. *Id.,* at 44–46. "Even [t]he effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services.'" *Id.,* at 45 (quot-

ing from *McKittrick v. Gardner,* 378 F.2d 872, 875 (4th Cir.1967)).

■ Far and away the most difficult aspect of this analysis is ascertaining the prevailing market rate in the relevant community. The United States Court of Appeals for the Second Circuit has stressed that the $75 per hour rate ceiling of the EAJA may not be "transported" to assess a reasonable fee under the SSA. *Wells v. Bowen, supra,* at 43. Even were such statutory scheme transportable to the consideration of fee awards under the SSA, this Court is skeptical of the evidentiary value of cost of living indexes which have been employed to augment the rate ceiling of the EAJA. *See, e.g., Parks v. Bowen,* 839 F.2d 44 (2d Cir.1988). Indexes, without benefit of live expert interpretation and explanation, are generally unsusceptible of a court's critical examination. Finally, *isolated* instances of fees awarded at or in excess of $100 per hour under the SSA in *other* district courts—*e.g., Russo v. Heckler,* 625 F.Supp. 1513 (E.D.N.Y.1986) ($125 per hour awarded under the SSA to "leading practitioner in the disability field"); *Snizaski v. Heckler,* 610 F.Supp. 529 (W.D. Pa.1985), *aff'd,* 782 F.2d 1031 (3rd Cir.1986) (fees awarded at or exceeding $100 per hour under the SSA in several cases)—do not establish a prevailing rate in this district. Testimonial evidence from local practitioners or the local bar association would seem most effective for elucidating the current prevailing rate for attorneys practicing in this district. There being no testimonial evidence (other than Ms. Osgood's and Ms. Wylegala's representations) at this time, this Court is compelled to proceed apprehensively and with the knowledge that the prevailing market rate for attorney's fees in this district cannot presently be so much determined from evidence as merely divined from inference.

■ As noted, Assistant United States Attorney Wylegala has interjected her view—based on her own experience and that of her fellow federal attorneys in Buffalo—that $90 per hour represents less than what many attorney's seeking SSA fees request, if not necessarily receive. In

addition, there can be no dispute that Ms. Osgood is a highly skilled practitioner in the disability benefits field. She attests to a ninety-five percent success ratio in these actions, and has never lost a disability benefits action before the undersigned. Further she has spoken at bar association seminars on the practice in the Social Security law field. Accordingly, this Court is able to surmise that $90 per hour is not greater than the prevailing market rate for services of the variety and quality offered by Ms. Osgood.

■ Ms. Osgood expended 22.2 hours of work on the substance of this action before this Court. She has also devoted 9.5 hours on her dual fee petition and in appearing before this Court thereon. The question arises in calculating the lodestar amount whether she may be compensated under the SSA for these additional hours spent seeking fees. So-called "fees for fees" are awardable under the EAJA—*Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 708 (2d Cir.1987)—and this Court, although it is unaware of any authority permitting similar treatment under the SSA, is comfortable in following and applying the rationale of *Trichilo v. Secretary of Health and Human Services, supra,* to these circumstances.

Accordingly, the entire 31.7 hours of work performed herein will be rewarded under 42 U.S.C. § 406(b). At the prevailing rate of $90 per hour, the lodestar amount equals $2,853 in this case.

■ Next, this Court "must articulate, on the record, the weight [to be] assigned to the risks of contingency." *Wells v. Bowen, supra,* at 46. Ms. Osgood's high success ratio paradoxically works against her in considering to what extent her contingency fee arrangement with the plaintiff will enhance her rate of remuneration. *See ibid.* (success rate as factor in weighing risks).[1] She obviously is very adept at screening her cases in the first instance. Her .950 "batting average" compares most favorably with statistics compiled by the Social Security Administration for the years 1981–1987 indicating that social security litigants in federal court can expect to ultimately prevail at a rate of roughly less than .500. *See id.,* at fn.1. The upshot is that Ms. Osgood enjoys much less of a risk of non-payment than most of her fellow practitioners in the field and hence is less in need of being rewarded a contingency premium in those cases in which she is successful.

This Court is therefore of the view that a rough articulation of the weight to be assigned to the risk of contingency in this case should involve a variable numerical multiplier based upon Ms. Osgood's individual risk factor. The United States Court of Appeals for the Second Circuit has refused to adopt an automatic numerical multiplier based upon a prevailing statistical success rate of all social security litigants. *Wells v. Bowen, supra,* at 45. However, a *variable* multiplier based upon an individual attorney's particular prospects of failure is a vastly more accurate reflection of the particular attorney's risk of non-payment than the aforesaid automatic multiplier.

Ms. Osgood has attested that she enjoys a 95 percent success ratio on these sorts of cases. Hence, her risk of non-payment was approximately five percent. Multiplied by the lodestar amount of $2,853, such percentage derives a contingency enhancement of $142.65.[2] Together the lodestar amount and the contingency enhancement

1. *Wells v. Bowen* suggests that a district court "may consider a variety of factors" aside from "success rate" in weighing the effect of a contingency fee in a given case, but this Court finds it difficult to conceive of any additional factors which might have relevance. Contingency is evaluated in determining a reasonable fee so as to account for the risk inherent therein, and the seemingly only reliable gauge of such risk is the attorney's success rate and that of other attorneys similarly situated. However, see footnote 2, *infra.*

2. This Court is not unaware of the incongruity of giving effect to the contingency factor in this way. It gives to the less capable attorney, who cannot achieve Ms. Osgood's high rate of success, a greater enhancement of his lodestar amount. The answer should lie in the allocation to such other attorney of a lower lodestar amount. Yet this well might not follow inasmuch as such amount is the multiple of an attorney's reasonable hourly charge and the number of hours reasonably devoted to the task. The less capable attorney will take longer to

produce a reasonable fee of $2,995.65. Accordingly, Ms. Osgood is entitled such amount pursuant to the SSA.

In accordance with what this Court deems a practicable application of *Wells v. Bowen, supra,* at 42 (lesser of dual fee awards belongs to the plaintiff) it is hereby ORDERED that the Secretary shall pay to Ms. Osgood pursuant to the EAJA the sum of $1,740, that Ms. Osgood shall endorse such check to the order of the plaintiff and send or deliver it to the plaintiff, and that the Secretary shall separately pay to Ms. Osgood *out of the retained 25% of the plaintiff's past-due benefits* the sum of $2,995.65 which she may retain as her fee for according legal services to the plaintiff from and after the institution of this lawsuit in 1987.[3]

complete the same task and the multiple or lodestar figure might be the same as Ms. Osgood's. Optimally, the less capable attorney's lower hourly rate should be used and the reasonability of the time spent by such other attorney be gauged by the time needed by the more capable attorney, such as Ms. Osgood, to do the same job.

Even more optimally, this Court should have evidence before it—which it does not—from which to find what percentage of risk the averagely capable attorney faces in this area and such contingency factor should be applied across the board to the Osgoods and all others. As noted in the text, this Court is aware of the disinclination on the part of the United States Court of Appeals for the Second Circuit in *Wells v. Bowen, supra* at 45, to rule "that enhancement for contingency factor *should* be an automatic numerical multiplier in all cases, based on some prevailing statistical success rate" (emphasis supplied), but whether courts *may* utilize such—particularly as screened from the results attained by the averagely capable attorney—conceivably is a separate and distinct inquiry not pertinent to the decision in this case and better left for that litigative scenario to which it is. The appellate court did opine, on page 46, that "[t]he [district] court may consider * * * the success rate in social security cases in general or in a particular subclass of cases."

3. The latter will work a salutary and protective diminution of the withheld benefits and a limitation upon the Secretary's generosity in allowing an attorney's fee for services rendered before the agency.