## NEW YORK CITY HOUSING AUTHORITY, Plaintiff,

v.

## Jack F. KEMP, as Secretary of the United States Department of Housing and Urban Development and United States Department of Housing and Urban Development, Defendants.

### No. 89 Civ. 7183 (PKL).

United States District Court, S.D. New York.

Nov. 29, 1990.

Proskauer Rose Goetz & Mendelsohn, New York City (Howard L. Ganz, Michael D. Davis, of counsel), for plaintiff.

Otto G. Obermaier, U.S. Atty., S.N.D.Y., New York City (Kay K. Gardiner, of counsel), for defendants.

### ORDER & OPINION

LEISURE, District Judge:

Plaintiff New York City Housing Authority (the "Housing Authority") sought a permanent injunction enjoining defendants

Jack F. Kemp [1] and the United States Department of Housing and Urban Development ("HUD") from discontinuing certain financial assistance to the Housing Authority. On December 22, 1989, this Court granted such injunctive relief by order. Plaintiff now moves, pursuant to 28 U.S.C. § 2412(b), for an award of attorneys' fees and expenses with respect to this action. For the reasons stated below, plaintiff's motion is denied.

## BACKGROUND

The dispute between the Housing Authority and HUD had its origin in an alleged violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, by plaintiff Housing Authority, due to its refusal to reinstate one of its employees to his job after an eye operation.[2] Plaintiff eventually agreed to reinstate the employee, but refused to execute a "voluntary compliance agreement" that provided, *inter alia*, for payment of the employee's back pay. Defendants deemed this refusal to be an additional violation of the Rehabilitation Act, and, therefore, in September 1989, decided to defer consideration of plaintiff's applications for a federal housing modernization grant and a federal grant for the construction and acquisition of new housing. HUD informed plaintiff of this decision on several occasions in September and October 1989. Plaintiff contends that defendants also threatened to discontinue the Housing Authority's ongoing operating subsidy, a contention defendants vigorously dispute.

During late September and October telephone calls and letters were exchanged between representatives of plaintiff and defendants, in an attempt to resolve this dispute, and a meeting was held between HUD's General Counsel, Frank Keating, and representatives of the Housing Authority. These discussions were to no avail, however, and on October 27, 1989, plaintiff

filed its complaint, together with a motion for a temporary restraining order.

On October 31, 1989, this Court held a hearing on the temporary restraining order motion, at which HUD submitted a sworn declaration stating that HUD had decided not to defer consideration of plaintiff's application for the modernization grant, Declaration of Joseph B. Lynch,[3] sworn to October 31, 1989 ("Lynch Decl.") ¶ 8, and that HUD had never deferred the payment of plaintiff's operating subsidy and had no plans to do so. Lynch Decl. ¶ 7. Thus the only applications as to which HUD maintained its deferral were those for the grant pertaining to the construction and acquisition of new housing. Following the hearing, the Court entered a temporary restraining order enjoining the defendants "from suspending, deferring, terminating, or refusing to grant or continue federal financial assistance to the Housing Authority unless and until defendants comply with the regulatory prerequisites for taking such action ... and accord the Housing Authority the due process rights guaranteed by the Fifth Amendment."

Settlement negotiations between the parties continued during November and December, and the temporary restraining order was extended by stipulation of the parties and order of the Court until December 22, 1989. On December 15, 1989, the defendants consented to be permanently enjoined from deferring action on any application for federal financial assistance on the basis of, or in connection with, the Finkel Complaint, but not with respect to any future complaints. On December 22, 1989, the Court issued an order (the "December 22 Order" 1989 WL 161524) permanently enjoining defendants from taking any of the actions referred to in the temporary restraining order "on the basis of, or in connection with, the Finkel Complaint and/or any other complaint filed against plaintiff under the Rehabilitation Act, unless and until defendants fully comply with

---

**1.** Secretary, United States Department of Housing and Urban Development.

**2.** The employee, Leonard Finkel, took a leave of absence to undergo cataract surgery and was

declined reinstatement due to his diminished eyesight.

**3.** Regional Administrator of HUD's New York Office.

all applicable legal prerequisites for taking such action...." December 22 Order at 11. Defendants had argued that, pursuant to Department of Justice regulations set forth at 28 C.F.R. 50.3(I)(A), (the "DOJ regulations"), HUD could temporarily defer action on applications for non-continuing federal financial support pending the completion of formal hearings on outstanding Rehabilitation Act claims. The Court, however, found that certain HUD regulations set forth at 24 C.F.R. 8.57(c), (the "HUD regulations"), controlled the case at bar, and prohibited HUD from taking any such action prior to a hearing regarding the underlying Rehabilitation Act claims.[1] In so holding, the Court stated that "[i]n the Court's view, there is essentially no difference between a deferral of consideration of an application for further funding and a refusal to grant funding." December 22 Order at 5.

## DISCUSSION

### I. The Applicable Standard

■ Section 2412(b) of 28 U.S.C., the Equal Access to Justice Act (EAJA), which forms the basis of plaintiff's instant motion for attorneys' fees and expenses, provides that

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

The prevailing rule under American common law, known as the "American Rule," is that parties to litigation pay their own attorneys' fees regardless of the outcome of the litigation. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616-17, 44 L.Ed.2d 141 (1975); Wells v. Bowen, 855 F.2d 37, 46 (2d Cir.1988); Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir.1985), cert. denied, 475 U.S. 1084, 106 S.Ct. 1464, 89 L.Ed.2d 720 (1986). There is an exception to this general rule, however, that applies when "a court determines that an unsuccessful party 'has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'" Wells, supra, 855 F.2d at 46 (quoting Alyeska, supra, 421 U.S. at 258-59, 95 S.Ct. at 1622 (quoting F.D. Rich Co. v. United States, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974))). The Second Circuit has repeatedly held that an award of attorneys' fees under this so-called "bad faith exception" is "warranted when 'the losing party's claims were "entirely without color and made for reasons of harassment or delay or for other improper purposes."'" Wells, supra, 855 F.2d at 46 (quoting Sierra Club, supra, 776 F.2d at 390 (quoting Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977))). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice," Sierra Club, supra, 776 F.2d at 390, and there must be "clear evidence" that both elements of the test are present. See, e.g., Eastway Construction Corp. v. City of New York, 762 F.2d 243, 253 (2d Cir.1985).[5]

---

**4.** Section 8.57(c) states, in relevant part: "No order suspending, terminating, or refusing to grant or continue federal financial assistance shall become effective until: .... (2) There has been an express finding on the record, after an opportunity for hearing, of a failure by the applicant or recipient to comply with a requirement imposed under this part...."

**5.** The Second Circuit has noted with some skepticism that there may exist "two types of bad faith, pre-litigation bad faith and bad faith during trial, [with] different standards to control

each situation." Sierra Club, supra, 776 F.2d at 390 n. 5. The Court compared what it referred to as "the supposed pre-litigation standard of Stolberg v. Members of the Board of Trustees, 474 F.2d 485, 490 (2d Cir.1973) (was the bringing of the action compelled by the defendant's 'unreasonable, obdurate obstinacy')," with the standard applied by the Second Circuit in a long line of cases including Browning, supra, 560 F.2d at 1088, and Wells, supra, 855 F.2d at 46. Sierra Club, supra, 776 F.2d at 390 n. 5. Where, as here, the Court is considering evidence of behavior of the defendants both before the liti-

With respect to motions for attorneys' fees made pursuant to section 2412(b) of the EAJA, such as that presently before the Court, the Second Circuit has explained that the bad faith exception to the American Rule

> was codified at 28 U.S.C. § 2412(b) and added to the EAJA in response to congressional concerns that the government be subjected to the same standards that apply to private litigants. *See* H.R.Rep. No. 1418, 96th Cong., 2nd Sess. 8–9, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4986–87. The exception, as codified, stands completely apart from that portion of the EAJA ... under which the government may be held liable for fees at certain statutory rates unless its position in litigation is substantially justified. *See* 28 U.S.C. § 2412(d). Section 2412(b) requires far more egregious conduct on the government's part than is required under section 2412(d)...."

*Wells, supra,* 855 F.2d at 46. Hence the restrictive application of the bad faith exception, as established by common law precedent in the Supreme Court and Second Circuit, is the appropriate standard to be applied in this case under section 2412(b) of the EAJA.

## II. Application of the Standard to this Case

### A. Meritlessness

■ Plaintiff argues that the defendants' conduct, both before and after this litigation was commenced, was "entirely without color." As its primary source of support for this proposition, plaintiff points to this Court's December 22 Order granting plaintiff permanent injunctive relief. Plaintiff's selective reading of the Court's language in the December 22 Order, however, is insufficient to support a finding that defendants' claims were "entirely without color." The December 22 Order

held that defendants' interpretation of the HUD regulations as excluding "deferrals" of funding was "overly technical," December 22 Order at 5, and that "there does not seem to be a meaningful rationale for splitting hairs in this fashion." December 22 Order at 6. The Court also found, however, that the DOJ regulations relied on by HUD as permitting the prehearing deferral of funding were "clearly repugnant" to the HUD regulations, December 22 Order at 7. Only after engaging in an extended analysis of the legislative purposes of the conflicting sets of regulations, did the Court find that the HUD regulations—rather than the DOJ regulations—controlled the case at bar. December 22 Order at 4–8.

"A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980). Conversely, "a claim is 'entirely without color' when it lacks any legal or factual basis." *Sierra Club, supra,* 776 F.2d at 390. Defendants' arguments, although ultimately unsuccessful, did not lack "any legal or factual basis." Rather, defendants relied upon the DOJ regulations, as well as case law supporting the position that federal agencies may defer applications for funding even where there is no specific statutory or regulatory authority to do so. The Supreme Court has cautioned the courts to "resist the understandable temptation to engage in *post hoc* reasoning" by concluding that because a party's position did not prevail, it must have been meritless, *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978), and this Court will heed that wise admonition. *Cf. Eastway, supra,* 762 F.2d at 254 (the sanction of attorneys' fees under Rule 11 should not

---

gation and after its commencement, the Court will apply the *Browning–Wells* standard. *See Sierra Club, supra,* 776 F.2d at 390 n. 5. Moreover, were this Court to apply the *Stolberg* standard, the Court would not find that the bringing of the action had been forced by the defendants' "unreasonable, obdurate obstinacy," *Stolberg,*

*supra,* 474 F.2d at 490, and thus would likewise deny plaintiff's motion for fees and expenses. The reasons underlying such a finding are substantially the same as those articulated in the Court's instant decision applying the *Browning–Wells* standard.

"stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.")

Likewise, the defendants' willingness to settle this action cannot serve to prove that their position was meritless, so as to warrant the awarding of attorneys' fees. In *Pierce v. Underwood*, 487 U.S. 552, 568, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988), plaintiffs seeking attorneys' fees argued that "the lack of substantial justification for the Government's position was demonstrated by its willingness to settle the litigation on unfavorable terms." The Supreme Court, however, rejected this reasoning:

> Other factors ... might explain the settlement equally well—for example, a change in substantive policy instituted by a new administration. The unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements.

*Pierce, supra*, 487 U.S. at 568, 108 S.Ct. at 2551-52. Therefore, despite plaintiff's conclusory assertion to the contrary, this Court cannot infer meritlessness from defendants' willingness to settle.

Finally, plaintiff argues that HUD never had a colorable claim that it could suspend payment of the ongoing operating subsidy, and that the defendants have explicitly acknowledged as much. This is true, as the DOJ regulations that HUD relied upon to withhold funding apply only to non-continuing federal financial support. However, the Court finds that plaintiff has failed to provide the requisite "clear evidence," *Eastway, supra*, 762 F.2d at 253, that the defendants in fact threatened to discontinue the operating subsidy. Plaintiff has provided no direct written evidence of such a threat, relying instead on affidavits purporting to recount the substance of conversations held between representatives of HUD and representatives of the Housing Authority.

In particular, plaintiff directs the Court's attention to a telephone conversation that took place on October 12, 1989, involving, *inter alia*, Thomas Casey,[6] Thomas Rosenthal,[7] Manuel Quintana,[8] and Joyce Lazoff.[9] According to Mr. Quintana, Mr. Casey in that conversation "indicated" that the subsidy payments "might well be discontinued." Affidavit of Manuel Quintana, sworn to on April 12, 1990, ¶ 8. Ms. Lazoff, in her affidavit, states that Mr. Casey "suggested" that the subsidy payments might be suspended. Affidavit of Joyce Lazoff, sworn to on October 27, 1989, ¶ 17. However, Mr. Casey has stated unequivocally in his affidavit that "[a]t no time during our October 12th conversation did I state to Mr. Quintana that the [Housing] Authority's operating subsidy 'might well be discontinued,' or otherwise threaten in any way its discontinuance." Affidavit of Thomas Casey, sworn to on August 28, 1990, ¶ 5. Furthermore, in a letter from Mr. Rosenthal to Mr. Casey dated October 16, 1989, summarizing the October 12 telephone conference, Mr. Rosenthal states that the Housing Authority had been informed of HUD's plans to withhold modernization, construction and acquisition funds. Yet no mention is made of any threat by HUD, explicit or otherwise, to discontinue the Housing Authority's operating subsidy. Given the extreme nature of such a threat, the Court would expect to find some mention of it in Rosenthal's letter. In sum, the Court cannot conclude that there exists "clear evidence" that the defendants took any position, either before or during this litigation, that was "entirely without color." *See Eastway, supra*, 762 F.2d at 253.

## B. Improper Purpose

Having found that plaintiff has failed to satisfy the first prong of the Second Cir-

---

6. Special Advisor to the General Counsel of HUD.

7. Chief of Employee Litigation at the Housing Authority.

8. General Counsel of the Housing Authority.

9. Assistant General Counsel for Human Resources at the Housing Authority.

cuit's test for awarding attorneys' fees, the Court need not consider the test's second prong. *Sierra Club, supra,* 776 F.2d at 390 (emphasizing the conjunctive nature of the test). However, the Court finds that plaintiff has also failed to supply clear evidence that HUD's actions were taken "for reasons of harassment or delay or for other improper purposes." *Wells, supra,* 855 F.2d at 46 (citations omitted).

Plaintiff does not contend, and obviously cannot contend, that the proper enforcement of the Rehabilitation Act by HUD constitutes an "improper purpose." Nor does plaintiff suggest that HUD had an improper ulterior motive for its conduct. Thus plaintiff offers as defendants' "improper purpose" an intent "to club the [Housing] Authority into submission by demanding that it execute a 'voluntary' compliance agreement...." Reply Memorandum in Support of Plaintiff's Application for an Award of Attorneys' Fees and Expenses at 6. While the Court will assume, *arguendo,* that "clubbing" the Housing Authority "into submission" is an improper purpose,[10] the Court finds that the "clear evidence" of such purpose, required by the Second Circuit, *Eastway, supra,* 762 F.2d at 253, is wholly lacking.

As evidence of defendants' improper purpose, plaintiff again points to defendants' willingness to settle this action once litigation was commenced. The fact that the defendants agreed to the entry of a permanent injunction with respect to most of plaintiff's claims does not, however, lead to the conclusion that defendants had previously acted in bad faith. *See Continental Sweden Corporation, Ltd. v. M.P. Howlett, Inc.,* 719 F.Supp. 1202, 1216 (S.D.N.Y. 1989) ("it does not follow that, because the defendants conceded liability, they had no good faith basis for denying it earlier"); *Jacobs v. Kinderhill Select Bloodstock, Inc.,* 1988 WL 36163 1988 U.S. Dist. LEXIS 3065 at 7 (S.D.N.Y.1988) (subsequent settlement and "swiftness of defendants' reversal in face of an actual lawsuit against

them" does not constitute clear showing of bad faith); *Barcia v. Sitkin,* 683 F.Supp. 353, 358 (S.D.N.Y.1988) ("That the state reached a settlement close to the figures originally submitted by plaintiffs is not per se indicative of bad faith."); *cf. Pierce, supra,* 487 U.S. at 568, 108 S.Ct. at 2551–52 (rejecting inference of meritlessness from government's willingness to settle lawsuit).

Plaintiff further argues that evidence of the defendants' improper purpose may be found in the weakness of their legal positions. In particular, plaintiff reiterates its arguments regarding the impermissibility of HUD's withholding of the Housing Authority's funding as providing such evidence. This argument must likewise be rejected. First, the Court has already found that, as a matter of law, the positions taken by the defendants before and during this litigation were not meritless. Moreover, in *Sierra Club, supra,* 776 F.2d 383, the Second Circuit reviewed a district court decision that had found bad faith on the part of the government by reasoning that because the government's defenses "were colorless, 'it must be concluded that [they] were asserted for an improper purpose.'" *Sierra Club, supra,* 776 F.2d at 391 (quoting the district court's decision at 590 F.Supp. 1509, 1521 (S.D.N.Y.1984)). The Second Circuit rejected this reasoning and reversed the district court's finding of bad faith, stating that

This conclusion does not necessarily follow. Although a frivolous position will often signal an improper purpose, we have never held that a frivolous position may be equated with an improper purpose. Such a simple equation would turn the two-part standard into a one-part standard, a step we decline to take.

*Sierra Club, supra,* 776 F.2d at 391. Similarly, in the case at bar, the weakness of defendants' legal positions is no substitute for clear evidence of improper purpose. Absent such evidence, plaintiff's motion for attorneys' fees must be denied.

---

**10.** Although plaintiff's choice of language is clearly intended to—and does—suggest improper behavior on the part of HUD, such language could easily be rewritten so as to read that HUD's purpose was "to require the Housing Authority to comply with federal law." Plaintiff's diction cannot, without more, create an improper purpose in the defendants.

## CONCLUSION

For the reasons stated above, plaintiff's motion for attorneys' fees and expenses pursuant to 28 U.S.C. § 2412(b) is denied.

SO ORDERED.

