Claire MARA, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. 88 Civ. 5008 (RWS).

United States District Court, S.D. New York.

Sept. 11, 1989.

As Amended Oct. 2, 1989.

Meltzer & Fishman, New York City, for plaintiff (Stanley F. Meltzer, of counsel).

Benito Romano, U.S. Atty. for S.D.N.Y., New York City, for defendant (Sapna V. Raj, Asst. U.S. Atty., of counsel).

## OPINION

SWEET, District Judge.

After obtaining a judgment on the pleadings directing defendant Louis W. Sullivan, M.D., Secretary of Health and Human Services (the "Secretary"), to pay plaintiff Claire Mara ("Mara") disability insurance benefits, Mara's counsel, Stanley F. Meltzer ("Meltzer") has moved for an order 1) granting attorney's fees and costs amounting to twenty-five percent of past-due benefits under 42 U.S.C. § 406(b), 2) awarding attorney's fees and costs against the Secretary under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, based upon the Secretary's alleged lack of substantial justification and bad faith in denying Mara's application for benefits, and 3) imposing sanctions under Rule 11, Fed.R. Civ.P. For the reasons set forth below, Meltzer's motion is granted in part and denied in part.

*Prior Proceedings*

On December 29, 1986, Mara applied for disability insurance benefits under 42 U.S.C. §§ 416(i) and 423, claiming disability since July 29, 1986. Mara asserted that severe pain in her left hip and leg prevented her from walking.

The Secretary denied Mara's claim initially and upon reconsideration. Mara then requested an administrative hearing (the "Hearing"), which Administrative Law Judge Helen Anyel (the "ALJ") held on March 24, 1988. Meltzer represented Mara at the Hearing. On May 2, 1988, the ALJ issued an opinion denying Mara's claim.

Mara asked the Appeals Council to review the ALJ's decision. The Appeals Council denied her request in June 1988, noting: "The Council is of the opinion that the arguments set forth [by Mara's representative] are not persuasive in view of the documentary evidence in the record which shows that you are not so restricted in your ability to function as to be precluded from engaging in your past relevant work activity." At that point, the ALJ's decision became a final determination of the Secretary.

On July 18, 1988, Mara sued the Secretary in this action. On August 17, 1988, the Secretary sought to extend his time to answer or move with respect to the complaint until November 16, 1988, and Mara agreed. On October 2, 1988, the Secretary again sought to extend his time to answer or move until January 17, 1989, and Mara again consented. When January 17, 1989 arrived, the Secretary sought another extension of time to answer or move, this time until February 20, 1989. Again, Mara agreed. When the Secretary on February 21, 1989 requested a fourth extension of time to answer or move, Mara understandably declined to consent.

The next day, the Secretary moved for an order extending his time to answer or move with respect to Mara's complaint, making his motion returnable March 10, 1989. Mara submitted papers opposing the motion. When the Assistant United States Attorney sought to adjourn the motion's return day until March 24, 1989—citing personal reasons for the delay—Mara consented.

On March 22, 1989, two days before the scheduled Hearing—and more than eight months after Mara filed her complaint—the Secretary submitted his answer, stating that the ALJ's findings of fact "are supported by substantial evidence, conclusive, and in accord with applicable laws and regulations." The answer included the administrative transcript, which the Secretary had certified on August 18, 1988.

As scheduled, the court held a Hearing on the Secretary's motion to extend time on March 24, 1989. Counsel for the Secretary failed to attend, but Meltzer was present on Mara's behalf. At that Hearing, the court endorsed an order denying Mara's motion for a default judgment, based upon the Secretary's filing of an answer. To prevent further delays on the Secretary's part, the court ordered that the parties make all motions returnable on April 14, 1989.

On March 31, 1989, Mara filed a motion for judgment on the pleadings, returnable April 14, 1989. The day before the motion's scheduled return date, the Secre-

tary's counsel—having submitted no opposing papers at that time—requested a week's adjournment of the Hearing, claiming a conflict with another Hearing scheduled for April 14, 1989. The court granted the Secretary's request, adjourning the motion until April 21, 1989.

On April 21, 1989, the Secretary's counsel appeared before the court to report that the Secretary had agreed to pay Mara the benefits she had applied for almost two-and-a-half years earlier. At that time, the court granted Mara's motion for judgment on the pleadings and remanded the case for the Secretary to compute the benefits he owed Mara. Mara's counsel reserved his right to move for attorney's fees and sanctions.

*The Facts*

Mara was born on November 16, 1927. After graduating from high school, she attended the Fashion Institute of Technology for two years, studying fashion design. Mara worked most of her life as a fashion designer with various companies. Mara also worked for a time as president of a small fashion boutique.

Mara's medical problems began in 1984, when she experienced low back pain radiating to her left leg and hip. In the winter of 1984, a surgeon at Roosevelt Hospital performed minor surgery. Because of the pain, Mara did not work for a period during 1984 and 1985.

In 1985, Mara returned to work as a designer with Chapnick & Company. When Chapnick & Company went out of business, Mara could not get another design job, and she began working full-time as a salesperson with Bloomingdale's. Mara's job as a salesperson required her to stand for eight hours per day, and on July 28, 1986 she developed a shooting pain in her leg and back that forced her to be carried out of her workplace.

Mara's pain required extended stays at several hospitals, including St. Vincent's Hospital (August 3, 1986 to August 30, 1986), Mount Sinai Hospital (September 18, 1986 until October 4, 1986), and Doctors Hospital (October 13, 1986 to November 1, 1986). In September 1986, Mara began seeing Dr. Jonah Kosovsky ("Dr. Kosovsky"), who visited her almost daily while she was hospitalized.

In an effort to relieve her pain, Mara underwent a variety of treatments, including hospital bedrest, traction, acupuncture, TENS, physical therapy, heat treatments, exercise, chiropracty, epidural injections, and steroids. Despite the various attempts at treatment, however, the pain was unrelenting. Mara testified at the hearing: "I was crippled, unable to walk, even from my bed to the bathroom."

On December 29, 1986, Dr. Allen S. Rothman ("Dr. Rothman") operated on Mara to remove a herniated disc. The surgery allowed Mara to walk, but her pain continued. She underwent another CAT scan that revealed scar tissue resulting from the surgery. Mara asked to undergo corrective surgery, but the surgeon refused, stating that further surgery would be futile because her body had demonstrated a tendency to form scar tissue.

The record contains several physicians' reports discussing Mara's condition. On February 4, 1987, Dr. Kosovsky wrote:

> Ms. Claire Mara underwent neurosurgery on her back a month ago. She still has pain, weakness, and altered sensation in her back and right leg.
>
> Ms. Mara is unable to resume her usual occupation. I consider her totally disabled.

On April 21, 1987, Dr. Mario Mancheno ("Dr. Mancheno") conducted a consultative examination of Mara for the Secretary. Among other things, his report noted that Mara "uses a cane," but "it appears that she does not really need the cane."

When Dr. Kosovsky retired due to ill health, Mara began seeing Dr. Jack J. Adler ("Dr. Adler"). In a letter dated July 30, 1987, Dr. Adler reported:

> At present, Ms. Mara is unable to stay in any one position for a prolonged period of time. Thus while she is able to walk several blocks, she cannot stand for more than five to ten minutes, sit for more than fifteen to twenty minutes, without having pain that requires her to

get up and move around. Her pain can be disabling at times so that she will frequently take pain medication to control these symptoms.

Ms. Mara is unable to lift more than light weights. She is unable to do any activity that would involve bending or reaching above her head. She has no limitation of hand movements at this time.

.... As I have not examined Ms. Mara before, it is impossible for me to say whether or not her condition has worsened. However, I believe it is fair to say that it has not improved significantly in the last six months and her pain requires constant medication.

In view of her age and experience, I do not think that she would be able to carry out any gainful activity for which she has been previously trained.

When the pain persisted, Mara began pain therapy in September 1987 at Mount Sinai Medical Center's Pain Management Medical Service under the care of Drs. Lawrence Kirschenbaum ("Dr. Kirschenbaum") and John Rottkamp ("Dr. Rottkamp"). On October 2, 1987, Drs. Kirschenbaum and Rottkamp prepared a report on Mara's condition. Their report noted, among other things, that:

1. Mara was taking a variety of pain medications, including Tylenol with codeine, Percodan, Tofranil, and Thorazine.

2. Mara's pain "is improved with rest and increased with exercise and movement from a chair to the upright position."

3. Mara exhibited "decreased knee DTR on the left."

In a Musculoskeletal Medical Report for the New York State Department of Social Services dated October 16, 1987, Dr. Kirschenbaum noted that Mara continued to suffer from pain and a reduced left knee jerk.

Responding to the ALJ's request for a more recent treating physician's report, Dr. Adler wrote a letter dated March 28, 1988, stating:

A CT Scan was performed on Ms. Claire Mara after her surgery and she has developed post-operative adhesions.

She is not a candidate for more surgery. She is still in great pain. I consider her to be totally disabled.

### Meltzer's Background and Role in This Case

Meltzer has been an attorney for thirty-one years. Before entering private practice, he served as an Assistant United States Attorney in the Eastern District of New York from 1961 to 1964. Meltzer currently is a partner in the law firm of Meltzer, Fishman & Madigan.

Meltzer has extensive experience in social security litigation, having handled approximately 2,500 administrative hearings and about 200 court actions during his career. He is a member of the National Organization of Social Security Claimants Representatives ("NOSSCR"), and he has served as President of the New York Social Security Bar Association. Meltzer has lectured widely on social security issues, including appearances before the NOSSCR, various health organizations (such as the Ileitis and Colitis Foundation and the Multiple Sclerosis Foundation), the Actuarial Society, the Pro Bono panel of the Eastern District of New York, and the New York State Trial Lawyers' Association. He also has testified as an expert in New York State Supreme Court.

Meltzer estimates that he spent approximately twenty-six-and-a-half hours prosecuting this case, including drafting the complaint, responding to the Secretary's motion to extend time to answer or move, preparing Mara's motion for judgment on the pleadings, appearing twice before this court, communicating with the Secretary's counsel regarding her four requests for extension of time, and preparing the instant motion for attorney's fees and costs. It can be assumed that Meltzer's extensive experience and expertise in the social security field enabled him to accomplish much in a relatively short period of time.

*Discussion*

### A. Awards Under 42 U.S.C. § 406

■ With Mara's consent, Meltzer has requested an award amounting to twenty-five percent of Mara's past-due benefits under 42 U.S.C. § 406(b)(1), which provides:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

Because the Secretary has yet to calculate the amount owed to Mara, Meltzer's request for fees under section 406(b)(1) is premature. In awarding fees under this section, a court must assess the award's reasonableness, typically with reference to the prevailing market rates. *See Wells v. Bowen*, 855 F.2d 37, 43 (2d Cir.1988). Without knowing the amount of past-due benefits, there is no way to determine the reasonableness of a twenty-five percent fee. *See, e.g., O'Grady v. Heckler*, 629 F.Supp. 1186, 1188 (E.D.N.Y.1986) (finding a twenty-five percent contingent fee that translated into $250 per hour unreasonable), *reh'g denied*, 661 F.Supp. 1030 (E.D. N.Y.1987). Accordingly, the motion for fees under section 406(b)(1) is denied without prejudice.[1]

### B. Awards Under the EAJA

Meltzer also has requested attorney's fees and costs under section 2412 of the EAJA. The pertinent subsections of section 2412 provide:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees or expenses to the same extent that any other parties would be liable under the common law or under the terms of any statute which specifically provides for such an award.

> \*    \*    \*    \*    \*    \*

> (c)(2) Any judgment against the United States or any agency and any official of the United States acting in his or her official capacity for fees and expenses of attorneys pursuant to subsection (b) shall be paid as provided in sections 2414 and 2517 of this title, except that if the basis for the award is a finding that the United States acted in bad faith, then the award shall be paid by any agency found to have acted in bad faith and shall be in addition to any relief provided in the judgment.

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

> \*    \*    \*    \*    \*    \*

> (2) For the purposes of this subsection—

> (A) "fees and other expenses" includes . . . reasonable attorney fees . . . except that . . . attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in

---

1. Although this opinion grants Meltzer's request for attorney's fees under section 2412(b), Meltzer can renew his application for fees under section 406(b)(1) once the Secretary determines the amount of past-due benefits he owes Mara. Fee applications under these two statutes operate independently, *see Wells*, 855 F.2d at 43, and one commentator has recommended that attorneys file section 406(b)(1) petitions separately from section 2412 applications. *See* Duggan, *Attorney's Fees Pursuant to the Equal Access to Justice Act*, Soc.Sec.Rep.Serv. 546 (Mar. 22, 1989).

the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

Pursuant to these provisions, Meltzer has two options for recovering attorney's fees. By establishing that the government's position in this litigation was not "substantially justified," 28 U.S.C. § 2412(d)(1)(A), Meltzer can recover attorney's fees at a statutory hourly rate of seventy-five dollars, with a cost of living adjustment for New York increasing that figure to $104. Meltzer has requested attorney's fees amounting to $2,756 pursuant to this section. If Meltzer can prove that the government acted in "bad faith" in this litigation, 28 U.S.C. §§ 2412(b) and (c)(2), Meltzer can recover attorney's fees at the prevailing market rate, which he claims is $250 per hour. Under this section, Meltzer has sought attorney's fees totaling $6,625.

### 1. Substantially Justified

█ The Supreme Court recently defined the EAJA's "substantially justified" standard as "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988); *see also Cohen v. Bowen*, 837 F.2d 582, 586 (2d Cir.1988) ("This circuit has repeatedly interpreted the 'substantially justified' standard to be essentially a standard of reasonableness."). The Secretary bears the burden of proving that the denial of benefits was substantially justified. *See Zimmerman v. Schweiker*, 575 F.Supp. 1436, 1438 (E.D.N.Y.1983).

Mara's treating physicians—Dr. Kosovsky and Dr. Adler—concluded that Mara was totally disabled and could not resume her previous employment. In a letter dated February 4, 1987, Dr. Kosovsky stated: "Ms. Mara is unable to resume her usual occupation. I consider her totally disabled." On July 27, 1987, Dr. Adler completed a Physical Capacities Evaluation and stated in a cover letter dated July 30, 1987: "In view of her age and experience, I do not think that she would be able to carry out any gainful activity for which she has been previously trained." Dr. Adler updated his opinion on March 28, 1988, concluding: "I consider [Mara] to be totally disabled."

In this circuit, "the claimant's treating physician's diagnoses and findings regarding the degree of claimant's impairments are binding on the ALJ unless there is substantial evidence to the contrary." *Arzuaga v. Bowen*, 833 F.2d 424 (2d Cir.1987); *see also Schisler v. Bowen*, 851 F.2d 43, 46–47 (2d Cir.1988) (approving an administrative statement of the treating physician rule); *Hidalgo v. Bowen*, 822 F.2d 294, 296–97 (2d Cir.1987) ("It has been our rule for the past 15 years that the expert opinion of a claimant's treating physician regarding his 'medical disability, i.e. diagnosis and nature and degree of impairment, is ... binding on the fact-finder unless controverted by substantial evidence.'") (quoting *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986)).

Although the ALJ paid lip service to the treating physician rule, she effectively eviscerated it. First, the ALJ improperly attempted to discredit the opinions offered by Mara's doctors. Second, the evidence she cited to contradict the treating physician's opinions was by no means "substantial."

### a) Invalid Criticisms of Treating Physicians' Opinions

The ALJ discounted Dr. Kosovsky's February 4, 1987 report, stating that it came only a month after surgery "when [Mara] can be expected to have continued to show discomfort." In doing so, however, the ALJ gave Dr. Kosovsky's report too little weight. She should have read the report in connection with the reports of Dr. Adler, who took over Dr. Kosovsky's medical practice and whose reports confirm Dr. Kosovsky's earlier findings. Dr. Adler began his July 30, 1987 letter: "I have taken the liberty of responding to your letter ... to Jonah D. Kosovsky, M.D., P.C." Later, Dr. Adler stated: "The surgery was performed earlier this year. She *continues* to have pain in the back and left leg." (Emphasis added). He also said: "I believe it is fair to

say that [Mara's condition] *has not improved significantly in the last six months* and her pain requires constant medication." (Emphasis added).

The ALJ mischaracterized Dr. Adler's July 30, 1987 report, which found Mara too disabled to work. The ALJ stated:

> In his other, more formal physical capacity evaluation, the internist [Dr. Adler] ... mentioned two to three hours of sitting per day and one to three hours of standing or walking, 10 pounds of lifting, capacity to use the left foot to operate pedals, and ability to use the upper extremities for simple grasping and fine manipulation.

In interpreting the Physical Capacities Evaluation, however, the ALJ ignored the fact that Dr. Adler had marked up the document to modify its form categories. Thus, although he circled the numbers indicating that Mara could sit for two to three hours in an eight hour day, he qualified this by writing next to his circles that Mara "cannot sit for [more than] 10 [minutes] at one time." Similarly, Dr. Adler circled the numbers indicating that Mara could stand for one to two hours in an eight hour day, but then wrote next to his circles that Mara can stand only for "brief periods" at a time. Finally, Dr. Adler circled the numbers indicating that Mara could walk for one to two hours in an eight hour day, then wrote beside these circles that Mara could not walk more than "several blocks" at a time.

The ALJ's skewed interpretation of Dr. Adler's Physical Capacities Evaluation itself supports a finding that the Secretary's position in this litigation was unreasonable and therefore not substantially justified. *See, e.g., O'Grady v. Heckler,* 629 F.Supp. 1186, 1187 (E.D.N.Y.1986) (awarding fees under the EAJA where "the Secretary had egregiously miscast the opinion of one of the doctors and the vocational expert in an effort to construct some support for terminating benefits"), *reh'g denied,* 661 F.Supp. 1030 (E.D.N.Y.1987).

Regarding Dr. Adler's March 28, 1988 letter finding Mara to be "totally disabled," the ALJ said: "The doctor's later statement mentioned no signs or symptoms." In fact, however, Dr. Adler's letter noted that Mara had "developed post-operative adhesions," was "not a candidate for more surgery," and was "still in great pain." The brevity of Dr. Adler's letter reflects the fact that he already had offered a detailed evaluation, and Mara's condition remained unchanged in his view.

Not only were the ALJ's criticisms baseless, the exercise was improper from the outset. As the Second Circuit has recognized, it is not the ALJ's role to "second guess" a treating physician's opinion. *See Arzuaga,* 833 F.2d at 426.

### b) Evidence Purportedly Contradicting the Treating Physicians' Opinions

After attempting to discredit Dr. Kosovsky's and Dr. Adler's opinions, the ALJ identified what she deemed "overwhelming evidence against disability [to] overcome the presumption in favor of the treating physician's conclusion." However, none of these factors rises to the level of "substantial evidence" contradicting the treating physicians' opinions.

The ALJ first noted that Dr. Rottkamp from the Pain Clinic wrote:

> [T]he patient was spoken to by myself, Dr. Kirschenbaum, and Dr. King about the possibility of finding a job in the future, which would help her deal with her illness better. It appears that she is somewhat reluctant to look for a job at present, but we will continue our support of this in the future.

The ALJ concluded that this statement contradicted Mara's treating physician's opinions that Mara was totally disabled and unable to perform her past work. However, Dr. Rottkamp did not offer this as a conclusion regarding Mara's ability to resume her previous employment. Read in context, this statement represents at most a view that Mara needs something to keep her busy to take her mind off the severe pain she endures daily.

Second, the ALJ stated: "The claimant's need for a cane is variable, as consultative examiner Mancheno noted that she did not really need the device despite bringing it

along." Whether or not Mara requires a cane has no bearing on her treating physicians' conclusions.

Third, the ALJ noted: "[Dr. Mancheno's] physical examination was essentially negative. X-rays did show severe disk cartilage thinning and moderate degenerative changes (with a possible calcified uterine myeloma incidentally noted), but [Dr. Mancheno] only interpreted as showing the previous surgery." However, Dr. Mancheno's report does not contradict Mara's treating physicians' opinions. He offers no conclusion regarding Mara's capacity for work. Moreover, a single examination by a doctor serving as consultant to the Secretary cannot alone constitute substantial evidence contradicting an opinion by a doctor that has treated the claimant every few weeks for almost two years.

The ALJ also noted: "At the Hearing, the claimant did seem capable of sitting, standing and walking without undue pain." The fact that Mara can sit through a brief hearing before the ALJ without squirming does not constitute substantial evidence disputing Mara's treating physicians' conclusions. Nor do the ALJ's conclusory statements that "[Mara] lives alone and told the Pain Clinic that she always goes out and does all of her own chores" and that "It is not clear why she could not do lifting in view of the absence of arm involvement."

Because the Secretary's denial of benefits to Mara was unreasonable in light of this circuit's well-established "treating physician rule," Meltzer is awarded attorney's fees amounting to $2,756 under section 2412(d)(1)(A).

**2. Bad Faith**

■ Under sections 2412(b) and (c)(2), Meltzer can recover attorney's fees at the prevailing market rate—rather than the statutory rate—if he establishes that the Secretary acted in bad faith in denying benefits to Mara. The Second Circuit has held that bad faith exists where:

"the losing party's claims were 'entirely without color and made for reasons of harassment or delay or for other improp-

er purposes.' The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."

*Wells v. Bowen,* 855 F.2d 37, 46 (2d Cir. 1988) (citations omitted). The Court then distinguished between section 2412(d)'s "substantially justified" standard and section 2412(b)'s "bad faith" test, noting: "Section 2412(b) requires far more egregious conduct on the government's part than is required under section 2412(d)...." *Id.*

Meltzer has failed to meet this more stringent standard. The ALJ's opinion was not "entirely without color." Although it clearly was insufficient to overcome the presumption raised by the treating physician rule, the fact that the doctors at Mt. Sinai's pain clinic surmised that Mara's condition might improve if she found a job offered limited support for the ALJ's conclusion that Mara was not disabled.

Moreover, there is no evidence that the Secretary acted for harassment, delay, or some other improper purpose. Meltzer has expressed frustration with the ALJ who heard Mara's claim, alleging that she has the lowest grant rate in the area, that she holds short hearings, that she fails to be courteous to claimants during hearings, and that she consistently ignores the law of the Second Circuit. However, counsel's frustration cannot support a finding of harassment, delay, or improper purpose on this record.

**c) *Rule 11 Sanctions***

■ Meltzer has sought sanctions under Rule 11, Fed.R.Civ.P., alleging that the Secretary's attorney violated that rule by filing an answer stating that the ALJ's findings of fact "are supported by substantial evidence, conclusive, and in accord with applicable laws and regulations."

Rule 11 provides:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable in-

quiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. In applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable as of the time he or she signed the pleading, motion, or other paper. *See Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1469–70 (2d Cir.1988), *cert. granted,* — U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson,* 803 F.2d 1265, 1274–75 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Courts should resolve all doubts and draw all inferences in favor of the signer. *See Riis v. Manufacturers Hanover Trust Co.,* 632 F.Supp. 1098, 1106 (S.D.N.Y.1986); *see also Eastway,* 762 F.2d at 254. Where a court finds a Rule 11 violation, sanctions are mandatory. *See Eastway,* 762 F.2d at 254 n. 7.

Courts have awarded attorney's fees under the EAJA in social security cases where they also have denied Rule 11 sanctions. *See, e.g., Zimmerman v. Schweiker,* 575 F.Supp. 1436 (E.D.N.Y.1983); *Mager v. Heckler,* 621 F.Supp. 1009 (D.Colo. 1985).

As was true for his section 2412(b) motion, Meltzer's Rule 11 motion represents an attempt to remedy what he perceives as a pervasive problem. In his memorandum supporting the Rule 11 motion, Meltzer writes: "[I]f this motion should operate in some small way to disencumber the incredibly torturous process of so-called 'super panel' review, engaged in only many months subsequent to the recognition of the incredible deficiency of the record, by imposing punitive costs *against the agency,* we will have achieved a salutary result." Plaintiffs' Mem. at 22–23 (emphasis in original).

However, despite Meltzer's frustration, the record does not support a finding that the Secretary's counsel violated Rule 11 by filing an answer in this case.

*Conclusion*

For the reasons set forth above, Meltzer's motion for attorney's fees and costs is granted in part and denied in part. Settle judgment on notice.

It is so ordered.